# Louisville & Nashville Railroad Company v. Parks' Administrator.

## (Decided June 5, 1913.)

## Appeal from Woodford Circuit Court.

1. Pleading—Petition—Amended Petition.—It was not error to permit an amended petition to be filed, the allegations of which might properly have been set up in the original petition, where a sufficient time elapsed after its filing to allow the opposite party to prepare and present his defense thereto.

2. Railroads—Crossings—Obstruction of View—Negligence.—It is negligence on the part of a railroad company to permit its right of way near a crossing to become foul with vegetation and underbrush so as to obscure the view of travelers upon the highway.

3. Railroads—Evidence—Competency.—Evidence as to the growth of vegetation and underbrush on a highway near a crossing is competent, in an action for injury at such crossing, as tending to show the dangerous nature of the crossing and the duty of the railroad company to employ signals, in addition to those required by statute, to warn the public of the approach of its trains.

4. Railroads—Appeal—Review—Witnesses—Number and Credibility—Evidence.—While the numerical superiority of the witnesses is with appellant, their credibility is for the jury; although the weight of the evidence is with appellant, if its preponderance is not overwhelming in character, the verdict will not be disturbed.

5. Appeal—Verdict.—In an action for death, where the evidence shows the earning capacity of decedent to be something like $1,000 a year and his expectancy to be practically twelve years, a verdict for little less than $6,000 will not be set aside as excessive.

6. Appeal—Instructions—Harmless Error.—In an action for personal injury an instruction as to the care required of the deceased for his own safety should be in the same terms as that as to the care required of the wrongdoer, but where the language used is practically the same, a reversal will not be ordered.

BENJAMIN D. WARFIELD and WALLACE & HARRISS for appellant.

FIELD McLEOD, ROBT. B. FRANKLIN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Thomas Parks was struck and killed, on June 20, 1911, by a west bound train of the Louisville & Nashville Railroad Company at a grade crossing in Woodford County. This crossing is at the intersection of the right of way of the Louisville & Atlantic division of the railroad com-

pany with the Elm corner and Pinckhart turnpike, a public highway, and is known as Elm corner or Lyon's crossing. Parks was driving along the highway, and his horse was injured and his vehicle and harness were demolished as a result of this accident. Parks' administrator sued the railroad company for damages sustained by the death of his intestate, and for the injuries to his horse, conveyance and harness, alleging that his loss was due to the negligent operation of said train. Defendant answered, traversing the material allegations of the petition and pleading contributory negligence, which plea was controverted by reply. Later the petition, in so far as it sought to recover for the injury to the horse, wagon and harness, was dismissed without prejudice. Plaintiff amended his petition and therein charged that the crossing in question was some five or six feet below the ground level and the approaches thereto, both along the railroad and turnpike, were through cuts, which fact made the crossing an unusually dangerous one; that, upon the occasion of the accident, the defendant negligently failed to give any proper or reasonable warning to plaintiff's intestate of the approach of said train, or to employ any reasonable means to that end; that it failed to provide the engine of said train with a steam whistle, or to have it in condition to sound; that it omitted to ring the bell or to sound the whistle for a distance of at least fifty rods from said crossing until it reached same; and that it negligently permitted its right of way on both sides of the track, especially on the southern side thereof, for a distance of at least 400 feet east of the turnpike to be covered and filled with growing weeds, brush, sprouts and high grass, which prevented the operatives of said train from seeing the approach of plaintiff's intestate and the latter from seeing or hearing the train before being struck. Motions to strike said amended pleadings from the files, to strike therefrom, and a demurrer thereto, were filed and overruled. The defendant's answer to the amended petition completed the issue. Upon a trial, the jury returned a verdict for plaintiff for $5,980. From the judgment entered thereon, defendant appeals.

The petition was filed in September, 1911. In October following, the defendant answered, and in addition to traversing the material allegation of the petition pleaded contributory negligence. A reply completed the issue. Thereafter, plaintiff filed an amended petition and caused summons to be issued thereon, and in this

amended petition alleged facts upon which he would be authorized to introduce proof showing that the crossing, where his decedent was killed, was an unusually dangerous one. It was also alleged in the amended petition that the whistle on the engine was defective. Before the case came on for trial, a motion was made by the defendant to strike this amended petition from the file. This motion was overruled, as was also a motion entered by defendant to strike out certain portions of the amended petition. Complaint is made that the court erred, first, in permitting said amendment to be filed, and second, in overruling its motion to strike same from the file. Appellee filed this amendment evidently because he feared that, under the general allegations of negligence, he would not be permitted to show that the crossing, at which the accident occurred, was an unusually dangerous one or that the whistle on the engine was defective, but whatever his purpose, we fail to see wherein appellant was prejudiced by reason of the court's refusal to strike said amendment from the file. The condition of the whistle on the engine was certainly a legitimate subject of inquiry and if, as a matter of fact, it was defective and as a result thereof the employees of appellant in charge of the train could not give such notice of the train's approach to the crossing as the law contemplates, appellee would certainly have been justified in showing this fact. So, likewise the conditions surrounding the crossing were a proper subject of inquiry in a case where it is alleged that the company, owing to the peculiar conditions and circumstances surrounding the crossing, may be required to use more than the statutory means to avoid injuring persons thereon. The object of the amendment was to prevent appellant from claiming that it was taken by surprise or that it was not fully advised of the ground upon which appellee rested his right to recover. Had all these facts been set out in the original petition, and a motion, to strike out the allegations made for the purpose of charging that the whistle was defective and that the crossing was an unusually dangerous one, had been made and overruled, it could not be seriously contended that the court erred. Since appellant was fully advised of these facts a sufficient length of time before the case was called for trial to enable it to prepare its case to meet the amended allegations of negligence, it is in no position to complain of the court's ruling.

This brings us to the complaint as to the admission of evidence showing the presence of weeds, briars and vege-tation along the railroad right of way and the highway near the crossing. It is insisted that, as the railroad company was not chargeable with the duty of keeping the vegetation, weeds, briars, etc., from along the highway, it could not be said to be negligent because of their presence along the highway between the railroad and the highway at that point. This evidence was offered for the purpose of showing the condition at and surrounding this crossing, in order that the jury might determine whether or not it was an unusually dangerous crossing. Some of the witnesses for appellee testify that the weeds, briars and bushes along the railroad right of way varied in height from four to eight feet; and the evidence for the company is to the effect that there was some vegetation growing along a part of the railroad right of way, in places as much as knee high. It is negligence on the part of a railroad company to permit its right of way to become foul with weeds, briars, underbrush, etc., as was expressly held in L. & N. R. Co. v. Clark, 105 Ky., 571, and L. & N. R. Co. v. Breeden, 111 Ky., 729. It is not clear from the evidence whether the undergrowth which obstructed the view was to any considerable extent on the right of way, but the proof abundantly shows that the vegetation was luxuriant along the roadside between the railroad and the public road. The fact that vegetation of this character was permitted to grow up along the side of the public road, is not chargeable as negligence against the railroad company, but if, as a matter of fact, the approach to the crossing was obscured by reason of such growth of weeds, briars, brush, etc., as to render the crossing an unusually dangerous one, and this fact was known to the company, it was then a question for the jury to say whether or not, under the circumstances, it was incumbent upon the company to use other and additional means than those provided in the statute to warn the public of its train's approach.

The case is not unlike that presented where houses are built along the roadside near crossings and which obstruct the view of travelers, when passing along the highway and over crossings, and prevent them from seeing the approach of trains. The difference is in degree merely. A house would totally obstruct the view, whereas weeds, briars and underbrush might or might not obstruct it entirely, dependent upon the character and

height of their growth. Since the railroad and the public road each ran through a cut at the point of intersection, it is readily seen that the growth of weeds, briars, or underbrush to any extent in between the two rendered it all the more difficult on the part of one traveling the high-way to observe the approach of the trains.

It is in evidence that the train was rolling down grade at about 30 or 35 miles an hour and that the steam was shut off, hence it was making less noise than it would have made had it been running under steam. The rattle of the wagon in which he was driving more than likely prevented decedent from hearing the train's approach, and if the conditions, on account of the growth of under-brush, briars, etc., were such that his view of the railroad was totally obscured at that point, it can readily be seen that if, as is testified by some of the witnesses, no signal of the train's approach was given, decedent was fur-nished no means of advising himself of the danger into which he was going. The evidence does not show that this road was a much frequented one, but, under the evi-dence as to the nature of the crossing and the conditions surrounding it, we would be unwilling to hold that it was not proper for the court to submit to the jury the ques-tion as to whether or not it was an unusually dangerous crossing; hence, the evidence relating to the nature of this crossing was competent.

It is next insisted that the verdict is not supported by sufficient evidence and is flagrantly against the evidence. Numerically the evidence offered by appellee to the effect that no signal of the train's approach to this crossing was given is outweighed by the evidence for appellant bear-ing upon this point, but, as is frequently stated, the jury is the judge of the credibility of the witnesses, and they have the right to accept the settlement of a few witnesses in preference to that of the many who may testify to the contrary. So that, while the weight of the evidence upon the question of signal or no signal is with appellant it is not so overwhelming in character as to justify us in hold-ing that because of its preponderance the verdict should be disturbed.

It is next urged that the verdict is excessive. The evidence shows that the decedent had an earning capacity of something like $1,000 per year. His expectancy, ac-cording to the life tables, was practically twelve years. Under this proof, we would not be warranted, were we so inclined, in holding that a verdict for less than $6,000

was excessive. Much larger verdicts have been upheld, where the earning capacity was shown to have been very much less, and the expectancy little more.

Lastly, it is insisted that the court erred in instructing the jury. The instructions given were copied from the case of L. & N. R. Co. v. Lucas, 30 Rep., 364, and, in slightly varying form, have been approved in numerous other cases where a similar question has been involved. We are of opinion that they fairly presented the issues as made by the pleadings and as warranted by the facts. While the instruction, defining the degree of care which should be exercised by decedent in approaching the crossing, might have been more explicit, we do not feel that it was prejudicial in the form given. The better plan would have been to cast upon decedent in terms the same degree of care which was imposed upon appellant in approaching the crossing, but the language used in the instruction, while not the same, was in effect the same. The jury evidently did not believe that any signal of this train's approach was given and that, as the train was merely rolling down the track as it were, the decedent drove upon the track without knowledge of its approach and met his death. As there was evidence from which such conclusion could be fairly drawn, we see no reason for disturbing the jury's finding and the judgment predicated thereon. It is, therefore, affirmed.