## E. P. Barnes & Brother v. Eastin, Admr.

(Decided November 9, 1920.)

### Appeal from Ohio Circuit Court.

1. Highways—Driver of Motor Car Must Maintain Lookout.—A driver of a motor car upon a public highway must keep a lookout ahead for other vehicles and persons upon the road; sound warning signals at all points where he can not see the road for a distance of 300 feet in advance; keep to the right of the road in the direction he is driving and keep his vehicle under control.

2. Highways—When Driver of Motor of Motor Car Guilty of Gross Negligence.—A driver of a motor car who in an effort to pass a car in front of him traveling in the same direction, turns his vehicle to the left of the road and into a portion of the road usually traveled by persons driving vehicles in the opposite direction and continues to speed ahead though engulfed in a cloud of dust so dense he can not see the road or other vehicles approaching, is guilty of gross negligence.

3. Highways—Duty of Driver of Motor Car.—A driver of a motor car who runs into a cloud of dust so thick he can not see the road should bring his car to a standstill and sound a warning notifying persons of his presence.

4. Highways—Passenger as Guest of Driver of Motor Car.—A passenger riding as the guest of the driver of an automobile is not guilty of contributory negligence precluding her recovery if the accident which brings about her injury results from the concurring negligence of the driver of the automobile in which she is riding and that of the driver of a truck traveling in the opposite direction.

5. Highways—Responsibility of Owner of Truck.—A truck which is owned and used by a mercantile firm for and in the delivery of goods, and driven by the firm's employee under the direction and

control of the general manager of the firm, the driver acting for and under the direction of the general manager and working upon the time of the firm, is in the service of the firm and the firm is responsible for his wrongful acts committed in the performance of his duties.

BARNES & SMITH and J. S. GLENN for appellants.

HEAVRIN & MARTIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

May Eastin, fifteen years old, lost her life in an automobile collision while she was riding as a guest of the driver, and her father, as administrator, brought this suit to recover damages for her death. This appeal is prosecuted by Barnes Bros., of Beaver Dam, to reverse a judgment for $4,000.00 entered upon a verdict for that amount in favor of the administrator.

She was a visitor in the vicinity of Beaver Dam in August, 1918, and met Dorris Martin and wife who invited her to take a ride with them in an automobile which Martin was driving. She accepted and the three, seated on the front seat of the car, started in the direction of Hartford, only a few miles away. The weather was hot and dry, and it was late in the afternoon. From the evidence it appears that Martin was driving rather fast and when he came near the place of the accident some of the witnesses say he was going thirty to forty miles per hour. The road runs over a small rise or hill and just as the car in which May Eastin was riding was approaching the summit of this rise, a car driven by a young man named Wilson came suddenly down the hill, passing the Martin car and casting up a great cloud of dust, so that the occupants of the Martin car could not see the road or even one another, whereupon Martin immediately put on both the service and emergency brakes in an effort to stop the car. While this was being done the car ran over the crest of the hill and was on the downward slope some 150 or 200 feet from the point at which the Wilson car passed Martin. The Martin car was on the right hand side of the road. Just after the car had passed the top of the hill and was starting down the slope on the other side, a truck owned by appellants, Barnes Bros., and driven by their chauffeur, Oldham, ran into and against the front end of the Martin car with such force that the impact threw Martin, wife and Miss Eastin forward against the glass windshield, cutting the juglar vein and windpipe

of Miss Eastin, from which injury she immediately thereafter died.

The public road along which they were traveling was about 26 feet wide; about 9 feet of the right hand side of the road as one travels from Beaver Dam to Hartford is macadamized while the balance of the road, about 17 feet, is dirt. Martin in the operation of the automobile was obeying the law of the road by keeping to the right, and at the time of the collision his car was on the macadam road, where it had a right to be. It appears that the Barnes truck was attempting to pass the Wilson car just in front of it, and in order to do so, turned towards the left side of the road on to the macadam in violation of the rules of the road. The dust was so dense that the driver, Oldham, could not see the road or approaching car. All the witnesses testify that the dust obscured everything and neither of the drivers was aware of the approach of the other car. No warning signals were given by either car.

The petition makes the following averments of negligence: "On the 16th day of August, 1918, while the said decedent, May Eastin, was traveling on the Hartford and Beaver Dam public highway, in Ohio county, Kentucky, in an automobile, and while exercising ordinary care for her own safety, the said E. P. Barnes & Bro., by its agent and servant in charge and control of one of its said automobile trucks or cars, carelessly and negligently drove said automobile truck or car into and against the car in which the said decedent was riding and said decedent was thereby by impact of said collision thrown against the wind shield of said car in which she was riding thereby severing her windpipe and juglar vein, which resulted in her death in a few minutes; that said agent and chauffeur in charge of said defendant's car or truck and operating said car or truck was incompetent, unqualified and unlicensed, which facts were all known to the defendants; that said chauffeur or agent of said defendants was operating said car in violation of law on the public highway. . . . The collision heretofore referred to occurred at a curve and on a hill on said public highway and that the said chauffeur operating said defendant's car or truck could not observe the road 300 feet in front of him and that at the time said defendant, by its agent or servant in charge of and operating said car or truck, was driving same in a grossly negligent and careless manner and at an excessive high rate of speed and

without giving any warning or signal of any kind of the approach of said car or truck and came suddenly and unexpectedly upon said car in which said decedent, May Eastin, was riding without any notice or warning whatever to said decedent or the driver of the car in which the decedent was riding and ran into and collided with said car without giving the occupants or the driver of same any chance or opportunity to avoid a collision with said car or truck.''

The negligence relied on in brief of counsel for appellees is stated as follows:

First: Negligence of appellants' chauffeur in driving the car at the time and place complained of at an unreasonable and unnecessary rate of speed.

Second: Negligence of appellants' chauffeur in running the car on the left hand side of the highway, in the direction in which he was going, up a hill, on a curve, in a cloud of dust, when he could not see objects in front of him without giving any warning of his approach.

Third: Negligence of the chauffeur of appellants' car in failing to give any signal of his approach to the summit of the hill.

Fourth: Negligence of the chauffeur of appellants' car in failing to turn to the right of the center of the road in attempting to pass the car driven by Dorris Martin, in which appellee's decedent was riding.

The answer traverses the allegations of negligence contained in the petition and affirmatively pleads contributory negligence.

In their brief counsel for appellants assert the following fourteen reasons why the judgment should be reversed:

1. It was an unavoidable accident on the part of Oldham, the driver of appellants' car, and of negligence of Martin, the driver of car in which decedent was riding.

2. Oldham, appellants' driver, was not negligent at the time.

3. It was error to reject the testimony of Oldham as to speed of the Martin car at the time of accident, based on the shock of the impact.

4. It was error to refuse to admit statement by Martin made immediately after accident, that the speed of his car was the cause of the accident.

5. It was competent to prove that decedent's mother and her sister reproved Martin in decedent's presence

for reckless driving, as these facts brought to her notice of his character as a reckless driver.

6. It was competent to show, by witnesses, the general reputation of Martin as a reckless and careless driver.

7. Under any theory of the case it was competent to show that Oldham was not acting for appellant company in making the trip but was acting for Byron Barnes alone.

8. The court should have sustained appellants' motion for a directed verdict.

9. Under the law appellee's decedent was required to exercise ordinary care for her own safety under the circumstances surrounding her and was guilty of contributory negligence preventing a recovery.

10. Instructions numbers 1, 2 and 3 are erroneous statements of the law as applied to the facts and were misleading to the jury.

11. Oldham had the right to run his car on any side of the road except when passing another car.

12. The petition set out the specific acts of negligence complained of, five in number, as follows:

a. Oldham was incompetent and unqualified.

b. He was operating the car unlawfully, as he had no license.

c. He was operating at more than twenty miles an hour.

d. He failed to sound an alarm at a point where he could not see 300 feet in front, and that the accident occurred at a curve on a hill.

e. That he was operating it at an excessive speed.

13. There being no evidence that Oldham was incompetent or that he was exceeding twenty miles an hour or going at an excessive speed, it was error to instruct on these points.

14. The instructions submitted false issues not made in the pleadings or proof and thus the jury were led into the field of speculation as to the facts.

Almost any one of the fourteen foregoing reasons would be sufficient to reverse the judgment if it existed in this case. They may be reduced to a much less number, because numbers 1, 2, 7 and 8 may be considered under one head, and 3, 4, 5 and 6 under another, and all the others under the subjects of "contributory negligence" and "instructions to the jury."

Was the collision an unavoidable accident, An unavoidable accident is one from which there is no escape.

But an accident which could have been prevented or avoided by the exercise of ordinary prudence, is not an unavoidable accident. The injury and death of Miss Eastin could, as appears from all the evidence, have been avoided if the driver of the truck had exercised ordinary care to prevent injury to others on the public highway. If Oldham had exercised ordinary care to keep the truck in its proper place in the road, or had sounded a warning signal, or had stopped the truck when he came into the cloud of dust no injury would have occurred.

A driver of a motor truck on a public highway who voluntarily turns his vehicle from the right hand side of the road to the left where vehicles going in the opposite direction are expected to travel, at a time when he can not see the road for dust, without giving a reasonable warning signal, is grossly negligent.

Oldham as well as Mr. and Mrs. Martin testify that the dust was so dense one could not see the road or any object immediately before him at the time of the accident. They are the only living witnesses. However, counsel for appellants insist that the witness Oldham should have been allowed to answer how fast the Martin car was traveling at the time of the accident based upon the impact. This would have been an impractical and vague thing to attempt, for we apprehend such a mathematical problem would be well nigh if not entirely beyond the grasp of the human mind. Moreover there was no qualification of the witness, for he did not show any special learning or knowledge of the subject. So far as the record discloses this was the only collision of motor cars which Oldham ever witnessed. He was not therefore qualified to give an opinion as an expert on how fast the Martin car was traveling at the time it encountered the truck driven by Oldham.

So far as the record shows Martin was guilty of no negligence at the instant of the accident, whatever may have been his want of care at other times. It was therefore unimportant as to what he said shortly after it happened about what caused the accident, and his statement, however strong it may have been, exonerating Oldham or self accusatory, would not have prejudiced the rights of the adminstrator of the decedent because the negligence of the driver was not imputable to her. She had no control over the driver or car and therefore his negligence was not a bar to her estate's recovery for the wrong in-

flicted upon her through the concurring negligence of the drivers of the two cars.

The case of Hackworth v. Ashby, 165 Ky. 799, was very similar to the instant case. The defendants' car was on the wrong side of the road when it ran into the car in which the plaintiff was a passenger guest, and we said:

"The issue in this case was whether the defendants, through the driver of their car, were negligent, and whether such negligence, if any, caused or contributed to the plaintiff's injuries. These things being found to be true, negligence on the part of Carrithers in driving the car in which plaintiff was riding, would not excuse the negligence of defendants, for even if Carrithers was negligent, and his negligence concurred with negligence upon the part of the defendants in causing plaintiff's injuries, she may recover from the defendants therefor. Paducah Traction Company v. Sine, 111 S. W. 356, 33 R. 792. Nor is the degree to which defendants' negligence contributed in causing the injury necessary to be determined. North Jellico Coal Company v. Trosper, 165 Ky. 417, 29 Cyc. 487."

. The administrator was entitled to recover of Barnes Bros. although they were not guilty of all the negligence which brought about her injury and death, if guilty of concurring negligence which contributed to her injury and death; and even though Martin was guilty of negligence at the time of the collision other than fast or reckless driving her cause of action against Barnes Bros. would not be taken away even if it be admitted she was aware of the proneness of Martin to speed his car, or knew that he was a reckless driver, for this knowledge could have taken away no cause of action in her favor which did not directly arise out of fast or reckless driving, and this was not true of this injury. The rule recognized and approved in the Winston case (179 Ky. 220) has no application to the facts of this case, for Miss Eastin did not in any degree contribute to her own injury.

While a passenger riding in a motor car can not shut his eyes to surrounding perils and rely on the driver for safe conduct, it has never been held that a passenger's cause of action for the negligence of a third party which caused a collision and injury to the passenger, is defeated by a showing that the driver of the passenger car was careless or unskillful, unless his carelessness or unskillfulness contributed directly to the injury. This was not shown in this case, but on the contrary the driver of the

truck was guilty of gross negligence which brought about the injury and death of the little girl.

Unless the carelessness and recklessness of Martin contributed to the injury of Miss Eastin it was not important that he had a reputation for reckless or careless driving.

Of course Barnes Bros. would not be liable for the negligence of Oldham, the driver of the truck, if he were not then in their service performing a duty in the regular line of his employment. He was the chauffeur and delivery boy for the firm, and regularly had charge of their truck. He was under the direction of the general manager of the store and took orders from him. The general manager in the exercise of his authority over him told the chauffeur to go to Hartford and bring some ice, and while on this trip the accident happened. The chauffeur was working on the firm's time and not his own or that of the general manager's as an individual. The truck was in charge of its chauffeur and under the direction of the general manager of the firm. This case does not fall within the class where the chauffeur steals the car out for an object of his own or while out for his master abandons the master's service to perform one wholly his own. In such cases the master is not liable. Eakin's Admr. v. Anderson, 169 Ky. 1; Crady v. Greer, 183 Ky. 675; Miller v. National Automobile Sales Co. (1913), 177 Ill. App.; Curren v. Lorch (1914), 243 Pa. 247.

The general manager of the firm directed the chauffeur to take the car of the firm and perform a special duty which he was attempting at the time of the accident. The truck was therefore in its regular line of employment as was the chauffeur Oldham, and his acts were the acts of the firm, and it was liable.

Decedent was guilty of no negligence, so far as the record shows, which contributed to bring about her injury.

A peremptory instruction in favor of appellants would have been error.

The instructions given by the trial court to the jury very carefully define the duties of the driver of the truck, and told the jury to find for the administrator, if it believed from the evidence that the truck driver was guilty of a violation of any of said duties.

The court correctly instructed the jury that it was the duty of the driver to have the truck under reasonable control, to give notice of its presence by the customary sig-

nals; to keep a lookout for vehicles upon the highway; to exercise ordinary care to prevent injury to persons or vehicles upon the highway; to operate the truck in a reasonably careful manner and at a reasonable rate of speed so as to be able to turn the truck on the right side of the center of the road in the direction in which said automobile was moving in passing the car in which decedent was riding, and to reduce the speed of the truck to not exceeding 15 miles per hour while passing an automobile. Practically all these things were required of the driver of a vehicle upon the highway by the common law before the enactment of our statutes upon the subject of motor vehicles. They reasonably facilitate traffic and render our highways fairly safe for public travel which would not be true but for such rules and regulations. The jury was further told that it was the duty of the driver of the truck to give warning of its approach to the summit of the hill by signaling with a bell, horn or other device, and to give such signal at any point on the highway where he could not see the road on which he was driving in front of him for a distance of 300 feet. Part of this instruction follows the statutes, and the balance is the common law of the land. As the driver of the truck could not see a car approaching from the opposite direction until it reached the top of the hill within less than 300 feet of where the collision occurred, it was the duty of Oldham to have sounded a warning signal, but this duty was magnified and emphasized when in attempting to pass the Wilson car in front of him he ran into a cloud of dust so thick that he could not see the road or any object. In such condition it was the imperative duty of the truck driver to sound a warning signal and to have his car under complete control, because that was a highway where the public had a right to be and travel in vehicles or on foot. Under such circumstances, all well known to the driver, he should have sounded a signal indicating his presence and at the same time brought his truck to a stop until the dust so cleared as to enable him to see the road and to know of the approach of other vehicles. Especially was this true while the truck was on the left hand side of the traveled road. It is plain from the evidence that Miss Eastin would not have received her injury but for the negligence of the driver of the truck in attempting to proceed without giving a warning in a cloud of dust which cut off his vision.

There was no contributory negligence on the part of Miss Eastin while she was riding as a guest of the Mar-

tins, and the negligence, if any there was, of Martin was not imputable to her. It is claimed however that she was guilty of contributory negligence in accepting the invitation from Martin whom it is charged she knew to be a fast and reckless driver. Reliance is had upon the Winston case, reported in 179 Ky. 222, and other cases holding to the rule that where a passenger trusts himself to the care of a drunken or unskillful driver with knowledge of the facts and the drunkenness or unskillfulness of the driver results in injury to the passenger, the passenger is guilty of contributory negligence. If there was any evidence to show that Martin was an unskilled and reckless driver, and that his unskillfulness and recklessness in driving contributed to or brought about the injury of Miss Eastin, it would have been proper to have submitted the question to the jury, but in the absence of such evidence it would have been error for the trial court to have submitted such an issue. If it be admitted that Martin was a rapid and reckless driver, still the evidence shows that he was driving at a place in the highway where he had a right to be, and that the truck of appellants' was being driven at a place where it had no right to be and but for the want of care of the driver of the truck in turning out on to the left side of the highway, no accident would have happened. It, therefore, follows that as the negligence with which they charge Martin did not and could not have contributed in the slightest degree to the accident which injured Miss Eastin, she could not be charged with contributory negligence in accepting his invitation to take a drive. This rule, however, does not abrogate in the slightest the principle announced in the Winston case, where we held "that the negligence of Nunnelly, the driver, is not imputable to Winston, nevertheless Winston, the injured party, was guilty of negligence in intrusting himself to such driver, he at the time being in possession of all the facts and knowing of the intoxicated condition of Nunnelly. This of itself was negligence which so contributed to the injury and death of Winston that but for which Winston would not have been injured."

There can be no doubt of the correctness of the rule which requires drivers of motor vehicles, while on the public highway, to exercise ordinary care to prevent injury to others, and this care can be exercised only by having the driver's vehicle under control, by giving reasonable warning of its approach to other vehicles and to persons and by exercising caution commensurate with

the immediate situation when the driver suddenly becomes engulfed in a cloud of dust or other blinding conditions, or where from sharp turns in the road, overhanging foliage, or other obstructions he can not see the road or tell the approach of other vehicles or persons from the opposite direction. Under such conditions a much greater duty rests upon the driver of a motor vehicle than under ordinary conditions where his vision is not obstructed. Where there is a duty to exercise a higher degree of care, there is a correspondingly high responsibility in case of injury through a failure to exercise a degree of care commensurate with the situation.

Finding no error to the prejudice of appellants, the judgment is affirmed.

Judgment affirmed.