## Ray v. Ray.

## Same v. Same.

(Decided November 24, 1922.)

## Appeals from Hardin Circuit Court.

1. Highways—Motor Vehicles—Imputing Contributory Negligence to Invitee in Automobile.—The contributory negligence of the driver of an automobile or other vehicle will not be imputed to a licensee or invitee riding in the vehicle, unless the latter knew of the facts, conduct and circumstances constituting the contributory negligence of the driver within time to guard against it by taking precautionary steps for his own safety and failed to do so, whereby he was subsequently injured because of the negligence of the driver.

2.  Trial—Instructions Upon Whole Law of Case.—It is not the duty of the court in a civil action to instruct the jury on the whole law of the case, but if he attempts to give an instruction on an involved issue it should be a correct one and, likewise, he should do so if one of the litigants offers an instruction upon that issue although it may not conform to the law; but in the absence of such an effort or offer, the failure to give the instruction cannot be relied on as grounds for a new trial either in the court below or on appeal.

3.  Evidence—Damaging Statement in Presence of Litigant—Hearsay.—A damaging statement made in the presence of a litigant, by whomsoever made, may be proven against the latter, provided it is further shown that the litigant heard the statement or, under the circumstances, must necessarily have heard it and that it was of such a nature as required of him some response which he failed to make. Proof of such a statement without further proof of what the litigant said or did or what he did not say or do is incompetent as being a mere hearsay statement, since the essential element to render the statement competent, i. e., implied acquiessence, is wanting from the failure of the litigant to deny or otherwise refute it.

4.  New Trial—Amendment of Verdict.—Irregularity in the receipt or amendment of a verdict can not be relied on, unless it is contained in the motion for a new trial as grounds therefor.

5.  New Trial—Correction of Verdict.—The jury returned into court with a verdict which was read by the clerk in their presence as being one in favor of plaintiff for twenty-five hundred dollars, and upon inquiry by the court it was assented to as read by all members of the jury. Before it was recorded and while nine members of the jury were yet in the court room the clerk discovered that the verdict was informally drawn in that it read, "We, the jury, find for the plaintiff in the sum of twenty hundred (2,500)." Nine of the jury were still in the court room and the court reassembled the jury and directed them to correct the verdict as they intended to make it, which they did by returning one as originally read by the clerk: Held, that the course pursued was not prejudicial, unless the verdict had been recorded, or the jury had been discharged and dispersed for such a length of time as to be subjected to possible influences.

6.  New Trial—Newly Discovered Evidence.—A new trial will not be granted for newly discovered evidence without a showing of proper diligence to obtain and produce it at the trial, nor will it be sufficient if it is merely cumulative in its nature, or if its extreme remoteness be such as to have but little, if any, material bearing upon the issues involved.

J. E. WISE, G. K. HOLBERT and H. L. JAMES for appellant.

L. A. FAUREST for appellee.

Opinion of the Court by Judge Thomas—Affirming judgments in each case.

Appellee in the above two actions, Ellen Ray, filed the first one in the Hardin circuit court against appellant, Andrew E. Ray, alleging that he wrongfully and negligently operated his automobile on the public highway in Hardin county by wilfully and carelessly running it against a mule hitched to a buggy in which plaintiff, her husband and two small children, were riding and causing the mule to become frightened and to run off with the buggy, whereby plaintiff was thrown out of it and sustained severe, permanent and painful injuries to her right arm and shoulder, producing great mental pain and anguish and permanently impairing her ability to work or perform her household duties. She sought a judgment for general damages for $20,000.00, and for special damages incurred for surgical and medical attention in the sum of $110.00, or a total sum of $20,110.00. The answer denied the negligence charged as well as the damages claimed, although it was not denied that plaintiff sustained injuries, and pleaded contributory negligence on the part of plaintiff which was denied by a reply, and upon trial the jury under instructions from the court returned a verdict in her favor against defendant for the sum of $2,500.00, upon which judgment was rendered, and, the court declining to set it aside on a motion for a new trial, defendant has appealed upon the grounds as expressly stated in brief that, "First, the court erred in failing and refusing to give to the jury a correct instruction on contributory negligence; second, the court erred in refusing to admit evidence as to a statement made by the husband of appellee in her presence, and third, the court erred in rendering a judgment on the verdict of the jury because the verdict was too indefinite and uncertain to authorize it and the court had no authority to reassemble the jury after it had been discharged and some of the members had left the court room," and those are the only grounds argued for a reversal.

The second case in the caption was an action filed after the adjournment of the court in which the judgment was rendered, by the defendant therein to obtain a new trial on the ground of newly discovered evidence material to his defense, and which he did not and could not, by the exercise of ordinary diligence, discover before the trial of the original case. The grounds for that

motion were properly put in issue by the pleadings and upon submission of the cause the court overruled it and dismissed the petition, from which judgment appellant prosecutes the second appeal in the caption. By agreement of parties the two appeals are heard together in this court and they will be disposed of in one opinion, the original appeal receiving first consideration.

1.   To the first complaint against the judgment, of the failure of the court to instruct the jury on contributory negligence of plaintiff, at least three answers may be made, which are: (a), that there is no evidence of any contributory negligence to sustain it, on the part of either plaintiff or her husband; (b), that if there had been proof of negligence on the part of the husband, who was driving the mule, it could not, under the state of the record, be imputed to his wife, the plaintiff, and (c), no such instruction was asked by defendant at the trial.   Only the parties to the suit testified as to what occurred at the time of the accident.   Plaintiff testified that the buggy in which she was riding met defendant in his automobile just as she and her husband were driving into the road from a temporary detour around a mudhole and that plaintiff ran his automobile against the forelegs of the mule without stopping and caused it to become frightened and run away and that before doing so he said to her husband, ''Get out of my way; I will run over you,'' whereupon her husband said to him, ''For God's sake, Cebe, don't do that.   Don't crowd me like that.''   After plaintiff was hurt and was taken home in the automobile of defendant, her two sons, one of whom was thirteen and the other fifteen years of age, testified that plaintiff stated to them that ''He ran into father and mother with the machine and scarred the mule and she ran down through the woods.''   They also testified that after the mule, which broke loose from the buggy and was running at large on the commons, was found on the next day it had a large knot on its left fore leg near the knee, which eventually disappeared leaving the spot devoid of hair. Defendant testified that as he approached the buggy containing plaintiff and her husband, they were driving around the mudhole in the road, and, quoting from his testimony, ''I drove up on the main road and when I came to this mudhole I started to go around.   I stopped so that they could come out into the main road.   They tried to stop but the mule wouldn't stop.   He reared up and ran down through the

woods.'' He then testified that he killed his engine and stopped the automobile ten or twelve feet in front of the mule, and that he never ran against it or touched it with his automobile. The great preponderance of the evidence showed that the mule was gentle and unafraid of automobiles and that it had been frequently driven by members of plaintiff's family, including herself, on the various roads in the community and had met and passed many automobiles without its paying the slightest attention to them; while defendant introduced a less number of witnesses to show that the mule on former occasions had shied at automobiles. The foregoing testimony is, in substance, all that was heard at the trial as to how the accident happened, and there is nothing in it upon which to base a charge of contributory negligence on the part of any one, and answer (a) must, therefore, be considered as established.

In the cases of Winston's Admr. v. City of Henderson, 179 Ky. 220, and Barnes and Brother v. Easton's Admr., 190 Ky. 392, it was held that the negligence of the driver of an automobile or other vehicle would be imputed to an invitee or licensee riding therein if the latter had knowledge of the facts constituting the contributory negligence for a sufficient time prior to the accident to enable him to take the requisite precautionary steps to avert it, and if he should fail to take such steps within such time and was afterwards injured through the alleged negligence of another, the latter, in a suit against him by the invitee or licensee, could rely on contributory negligence of the driver. No such rule applies, however, when the contributory negligence of the driver arises suddenly and without an opportunity of the invitee or licensee to exercise the proper care to avoid its consequences or to provide for his safety. And so, in the cases of Louisville Ry. Co. v. McCarthy, 129 Ky. 814, and City of Louisville, v. Zoeller, 155 Ky. 192, it was held that, under facts not distinguishable from those in this case, the negligence of the husband as driver of the vehicle in which his wife was riding could not be imputed to the latter in an action by her against the producer of her injuries, and therefore answer (b) is also effectual against the contention.

The rule of practice to the effect that in civil cases it is not the duty of the court to give to the jury the whole law of the case, and that a litigant may not complain of the judgment, either on a motion for a new trial or on

appeal, because the court did not instruct the jury on a material issue in the case, when no instruction was offered on that issue, is so universally applied in this and other courts that we deem it scarcely necessary to cite cases in support of it. The practice is elementary and some of the many cases from this court recognizing and applying it are: Asher v. Metcalfe, 152 Ky. 632; Chesapeake & Ohio Ry. Co. v. Shaw, 168 Ky. 537; Winchester v. Watson, 169 Ky. 213; Spiegle v. C., N. O. & T. P. Ry. Co., 170 Ky. 285, and numerous others cited therein. If, however, the court attempts to instruct upon an issue it should be properly done and if the complaining litigant offers an instruction upon an issue, though incorrect, it would be the duty of the court to prepare and give the correct one on that issue. In this case the court did not attempt to instruct the jury on contributory negligence, either properly or improperly, nor did defendant offer any instructions upon that issue, and under no view of the case is he now entitled to complain of the failure of the court to instruct on contributory negligence, and for that reason answer (c) must prevail.

The second ground relied on for a reversal is bottomed on testimony offered to be proven by the witness, J. R. Slaughter, who was asked, "State whether or not Bruno Ray (plaintiff's husband), in the presence and hearing of his wife made any statement to you about this accident." The court sustained an objection to the question and an avowal was made, "That if permitted to answer the witness would say that he did." Witness was then asked, "What was stated?" to which an objection was sustained and it was avowed, "That if permitted to answer the witness would say that on this occasion Bruno Ray in the presence of his wife told him (witness) that on the occasion of the accident Cebe Ray stopped his machine, killed the engine, the mule stopped, Cebe Ray got out of his machine and started to help him by with the mule." The insistence is made that the statement attributed to the husband was in the nature of an admission by plaintiff, who, it is claimed, was present, that the accident happened, not as plaintiff testified it did, but in a manner exculpating defendant of any negligence. The rule contended for and sought to be applied here is rested upon the theory that if a damaging statement is made in the presence of a litigant and he heard it, or the circumstances were such that he must necessarily have heard it, *and* he neither *said* nor

*did* anything in refutation of it, his silence, under the circumstances, may be treated as an admission of the truth of the statement, and it is universally regarded as competent, under such circumscribing circumstances, to prove such statements, and which rule of practice this court has heretofore recognized and applied. 16 Cyc. 956-960; 22 Corpus Juris, 321-324; Greenleaf on Evidence, section 197; Bowlin v. Commonwealth, 195 Ky. 600, and cases cited therein. The authorities hold, however, that no acquiescense in the truth of such statements may be implied, unless the party against whom they are sought to be introduced was free to act or speak with reference to them at the time they were made and that the circumstances were such as to call on him for a negative reply and that he failed to make it. So that, to prove the making of such a statement by a third party in the presence of the litigant without going further and also prove what the latter said or did or failed to say or do will not render the statement competent. Hence, in the language of the text in Corpus Juris, *supra,* on page 321, it is said: "A statement which, although made in the presence of the party, is not connected with his conduct at the time when it was made, is mere hearsay and not evidence against him of any fact narrated therein. But where a definite statement of a matter of fact, affecting a party or his rights, is made in his presence or hearing so that he understands it, and the statement is of such a nature as to call for a reply, the statement, in connection with a total or partial failure to reply, is admissible as tending to show a concession of the truth of the facts stated." Again on page 322 it is said: "The fact of non-denial or other conduct being the essential element, it is comparatively immaterial by whom the statement itself is made." The very ground upon which such evidence is admissible is that under the circumstances the litigant was called upon to deny or make some refuting reply to the statement *and failed to do so.* The mere proof of the statement without additional proof of the italicized fact is of no avail whatever, since, in that case, in the language of the above text, "It would be mere hearsay." It therefore results that this ground is without merit.

The third ground relied on for a reversal is bottomed upon certain facts which appeared at the trial with reference to returning of the verdict by the jury and its acceptance by the court and his subsequent action con-

cerning its amendment. It affirmatively appears from the record that the jury returned into the court room with their verdict and announced to the court that they had agreed, and handed the verdict to the clerk, who thus read it: "We, the jury, find for the plaintiff in the sum of twenty-five hundred ($2,500.00) dollars," and the usual question was asked whether it was the verdict of each juror and they replied in the affirmative, and the jury was discharged from further consideration of the case. Directly thereafter, and while the clerk was recording the verdict, he discovered that it read: "We, the jury, find for the plaintiff in the sum of twenty hundred (2,500)," and the court reassembled the jury, only three of whom had left the court room, and instructed them to retire and formulate their verdict in accordance with their intention, which they did and returned it as originally read by the clerk. It is seriously contended that the action of the court in reassembling the jury and having it to correct the verdict so as to conform to their intention was wholly unwarranted and grievous error. The cases relied on in support of the contention are: Faman v. Lexington Ice Mfg. and Storage Co., 8 Ky. L. R. 97, an opinion by our former Superior Court, and Musselman v. Williams, 21 Ky. L. R. 1077, 54 S. W. R. 3. We have neither the time nor the space to point out the distinctions between the facts of those cases and this one, but which can readily be seen by reading the opinions. In the Faman case Judge Richards, writing for the Superior Court, said: "Under proper circumstances the jury might be recalled and allowed themselves to correct the verdict." No such practice was done or offered to be done in either of the cases relied on, but the court in each of them rendered such a judgment as it thought the jury intended by their verdict. The text in 38 Cyc. 1893, says: "The amendment (of a verdict) may be made even though the jurors have separated, where the object of the amendment is only to express the legal meaning of the finding," and further it is stated under the heading "Under Direction of Court," in same book page 1893, that: "The rule is well settled that the court may, with proper instructions, recommit a verdict to the jury for their reconsideration, where the verdict which they have rendered is not in the proper form, where it is insufficient in substance, not responsive to or covering the issues or instructions, or is otherwise defective, as where the jury

return a verdict for plaintiff without assessing the damages in a case where damages should be assessed by them, or award inadequate damages; and it is error to decline to permit the jury to retire to amend the verdict. This may be done even after the jury have been discharged, where the amendment goes to formal matters only but does not materially alter the sense of the verdict, and although the verdict has been sealed, and although counsel be absent.'' Of course, no such correction, if allowed at all, could be made except within a reasonable time after it was returned and before it was recorded and before the jury had an opportunity to disperse and be subjected to possible influences. We attach no significance to the fact that the jury failed to indicate that their verdict was for a . sum of money, since it will be read and construed in the light of the pleadings in the cause. 38 Cyc. 1901-1902, and Pittsburgh, etc., R. R. Co. v. Darlington, 129 Ky. 266. But, whether the action of the court in this case was proper or improper, it can not be relied on for a reversal since the error, if any, was not relied on in the motion for a new trial, and without calling the attention of the trial court to it in the motion for a new trial we are without authority to consider or review it on this appeal, which rule of practice is as thoroughly stated as any other one referred to in this opinion. Some of the later cases are Louisville & Nashville Railroad Co. v. Vaughan's Admr., 183 Ky. 829; Harrodd v. Armstrong, 177 Ky. 317; Louisville & Nashville Railroad Co. v. Woodford, 152 Ky. 398; Walter v. Louisville Railway Co., 150 Ky. 652; Acme Mills and Elevator Co. v. Rieves, 141 Ky. 783, and numerous other cases referred to in those opinions. It is, therefore, apparent that none of the grounds relied on for a reversal of the judgment in the first appeal are meritorious, nor can it be contended that the verdict is excessive, since aside from the great pain and suffering which plaintiff endured, according to the evidence, her right arm has become permanently impaired by greatly reduced motion in the shoulder joint rendering it necessary to move her shoulder blade in working the arm from which she continues to suffer pain, besides greatly reducing her ability to work or perform her household duties.

2. The newly discovered evidence relied on for a new trial in the second action brought for that purpose was the testimony of Thomas Goldsmith and his grand-

son, Thomas Lefler, who, it is alleged in the petition, were in an automobile and met plaintiff and her husband driving the mule hitched to the buggy just before defendant met them and that the mule shied at the Goldsmith automobile at that time. The testimony upon that hearing disclosed that the discovered witnesses, about thirty or forty yards beyond the place where the accident happened and while traveling up grade, met 'the mule drawing the buggy in which plaintiff was riding and that the mule ran off on one side of the road and was being held with taut lines by plaintiff's husband in such a manner as to produce the belief in the minds of the occupants of the automobile that it was frightened, but the testimony of the witnesses is very indefinite and vague as to whether it was actually frightened; besides, plaintiff denies that it was frightened, and it is in proof that one of the newly discovered witnesses stated that the mule was not frightened on that occasion. But, however that may be, the incident is too trifling and remote to be material on such a hearing. It will be observed that it was addressed to a collateral fact, *i. e.*, the disposition of the mule, from which it is sought to be inferred that the principal fact, of defendant's negligence causing its fright on the occasion of plaintiff's injuries, did not happen. So that, if the alleged newly discovered testimony was of such a nature as to thoroughly establish the collateral fact (which we do not think it was), then the proven fact has but a remote bearing upon the merits of the case. Furthermore, that collateral issue was investigated on the trial and both parties introduced evidence concerning it, and the alleged newly discovered evidence is cumulative with that heard on the trial and for which character of evidence a new trial will not ordinarily be granted, as this court has held in an unbroken line of decisions. Beyond such considerations, however, it is the universally established rule that before one may avail himself of newly discovered evidence he must show the requisite diligence on his part to have discovered and produced it at the trial, and that he was unable to do so. Both Goldsmith and Lefler testified that, as heretofore stated, they met plaintiff in the buggy some thirty or forty yards beyond the point where the accident happened in front of defendant and where it would seem he could have seen the apparent frightened condition of the mule when they passed it. What efforts, if any, he made to discover the occupants

of that automobile, if he did not already know them, are not shown in the record, although both Goldsmith and Lefler returned to the scene of the accident within a short while after it happened, and before plaintiff was removed by defendant to her residence.  It would appear, therefore, that the slightest diligence would have enabled defendant to discover the witnesses and prove by them the facts they knew upon his original trial. Without further elaboration, we are thoroughly convinced that the record falls far short of the requisite showing necessary to obtain a new trial upon the ground relied on.

Wherefore, the judgments in each case are affirmed.