# Cox's Administrator v. Cincinnati, New Orleans & Texas Pacific Railway Company et al.

## (Two Cases.)

### (Decided March 10, 1931.)

314

STEPHENS & STEELEY for appellants.

TYE, SILER, GILLIS & SILER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

About 8 a. m. on June 24, 1929, S. T. Cox and his wife, Zelpha Cox, while traveling in a Chevrolet coupe on the highway which crosses the tracks of the appellee at a station called Revilo, in McCreary county, were struck and killed by a train of the Cincinnati, New Orleans & Texas Pacific Railway Company, which train consisted of an engine, coal tender, and one car.

The administrator of Zelpha Cox was duly appointed, qualified, and filed an action to recover damages for her estate, resulting from her death, against the appellees, Cincinnati, New Orleans & Texas Pacific Railway Company, Fayette Thompson, and ——— Smith, who were the engineer and fireman, respectively, on the train which struck the automobile in which she was traveling.

The administrator of S. T. Cox was duly appointed and qualified and filed an action to recover damages resulting from S. T. Cox's death, against the appellees. By agreement the two actions were consolidated and heard together. At the conclusion of appellants' evidence, on motion of the appellees, the court gave to the jury a peremptory instruction to find for them. Judgment was entered on this verdict, dismissing the petitions with cost. From it, this appeal is prosecuted.

Revilo is a station on the Cincinnati, New Orleans & Texas Pacific Railway, situated on the outskirts of Stearns, an unincorporated town in McCreary county. S. T. Cox and Zelpha Cox resided in the vicinity of this crossing, on the Pine Knot road. They were familiar with this crossing. The highway crosses the railway tracks on a grade. The Highway is known as "The Airline to Lookout Mountain Route from Cincinnati to Chattanooga."

The highway runs practically parallel with the railroad through the county in a northern and southern direction. It is in sight of the railway tracks from three-quarters to one mile south of Revilo. There are three tracks at this crossing. The north-bound is on the east, the storage in the middle, and the south-bound is on the west. As the highway comes from the south at about 150 feet of the crossing, it makes a right angle turn to the left. On the left of it is a garage building. The storehouse, dwelling, and a few trees are located right along the highway. The garage is 150 to 200 feet south of the store, and on the east side of the railroad. The highway, after you turn to the right, goes down a grade. On the righthand side of it, there are two section houses and an embankment. The embankment is higher at section house No. 2 than at section house No. 1. A fence runs down from the right of the ground on which these section houses are built to within a few feet of the north-bound track. As a car approaches from the south on this highway, its occupants are unable for a short distance to see a train that comes from the north until they are within a few feet of the north-bound track, or within about 12 feet of it. The track some 200 or 250 feet to the south of the crossing curves to the right. The track north of the crossing comes out of what is known as "Sand Cut," estimated to be 30 to 35 feet deep and situated on a curve. "Sand Cut" was cut out of the surface of the ground for the purpose of grading the track.

At the time of the accident, the train which struck and killed decedents was backing toward the crossing from Sand Cut, which is about 800 or 900 feet north of the crossing. The rate of speed at which it is estimated to have been traveling varies from 15 to 35 miles per hour. The automobile came along the highway on the east side of the north-bound track, turned to the left

passing through a cut in the road, crossed the north-bound track, and as they approached the south-bound track, the car in which they were traveling was struck. Mrs. Cox was instantly killed and Mr. Cox died within about two hours. As they turned to the left to approach the crossing, the section houses were on their right and on the property of the railway company, and were at that time occupied by employees of the railway company. These section houses cut off their view, looking north toward Sand Cut, of the train as it was backing from Sand Cut toward the crossing. No employee of the railway company was on the back end of the train. The whistle was blown twice for the crossing about the time it came out of Sand Cut. The whistling post is 825 feet from the crossing. No other whistle was blown, and no bell was rung or other signal given to indicate the presence of the movement of the train or to indicate the intention of those in charge of the train to use the crossing.

The testimony as to whether deceased S. T. Cox, who was driving the automobile, at the time he drove onto the north track, was looking to the south, or down the track opposite the direction in which the train was backing, or directly across the track, varies. The engine of the train of cars was between the tender and caboose, on the opposite end from the crossing. The testimony as to whether S. T. Cox increased his speed before or at the time the car was struck, or continued at the same rate at which they approached the north-bound track, is conflicting. The deceased S. T. Cox was somewhat deaf.

The question presented on this appeal is: Did the court err in giving a peremptory instruction?

The appellee insists that both S. T. Cox and Zelpha Cox were guilty of contributory negligence, and therefore their estates are precluded from a recovery, and the giving of the peremptory instruction was proper. To sustain this contention they cite the cases of Long Fork Ry. Co. v. Martin, 212 Ky. 182, 278 S. W. 550; Cumberland River Ry. Co. v. Walton, 166 Ky. 371, 179 S. W. 245; Barrett's Adm'r v. L. & N. R. R. Co., 206 Ky. 662, 268 S. W. 283; Taylor's Adm'r v. K. & T. Ry. Co., 229 Ky. 129, 16 S. W. (2d) 785; Voorheis' Adm'r v. Chesapeaks & O. R. R. Co., 220 Ky. 746, 295 S. W. 1031; Louisville & N. R. R. Co. v. Sizemore's Adm'r, 221 Ky. 710, 299 S. W. 573; Illinois C. R. R. Co. v. Bozarth's Adm'r,

212 Ky. 426, 279 S. W. 636, and other cases along the same line.

In the Martin case, the deceased went deliberately in front of the train and was killed. In Taylor's Adm'r v. K. & T. Ry. Co., supra, he walked in front of an approaching train. He disregarded or ignored warnings given to him by others of the approach of the train. There was not a scintilla of evidence tending to prove negligence on the part of defendant in Piersall's Adm'r v. C. & O. R. R. Co., 180 Ky. 659, 203 S. W. 551. In Voorheis case and Hurst case, 220 Ky. 402, 295 S. W. 458, the injured person with knowledge of the approach of the train tried to cross the track ahead of it. In the Barrett case, supra, he had thrust himself on the railroad track immediately in front of the approaching train as in the Bozarth case. The rule deducible from those cases is that where one knowing of the approcah of the train undertakes to cross ahead of it and, from recklessness or mistaken judgment, is injured or killed, there can be no recovery, whatever may be the negligence of the defendant, or its agents, because his own recklessness or mistaken judgment was the proximate cause of the injury. The appellees urge that the case of Reynolds v. Atlantic Coast Line Ry. Co. (C. C. A.) 44 F. (2d) 338, is decisive of this one. Under the rule therein enunciated the deceased was under the duty to stop, look, and listen, but this rule has never been adopted or followed in this State. Ky. Stats., sec. 786; Big Sandy Ry. Co. v. Blair, 224 Ky. 367, 6 S. W. (2d) 453. The facts in the present case easily distinguish it from those cited by appellees. There is no evidence in this case to the effect that decedents S. T. and Zelpha Cox knew of the approach of the train and of its purpose to use the crossing before they attempted to drive onto the track in time to have avoided the collision, or that when at a safe distance from the track they knew of its approach and its purpose to use the crossing and, with this knowledge undertook to cross over the crossing ahead of it, and that they thereby contributed to or assumed the risk incident to their undertaking. Louisville & N. R. R. Co. v. Malloy's Adm'r, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; Id., 107 S. W. 217, 32 Ky. Law Rep. 745.

It was the duty of appellees to maintain a lookout and to exercise ordinary care to avoid injuring persons using the crossing, and to begin to ring the engine bell

or sound the whistle at least 50 rods from the crossing and continuously or alternately ring it or sound the whistle until the engine reached the highway crossing. The train was being backed onto and over the crossing without blowing the whistle or ringing the bell, and without the presence of any one on or off the train to warn the traveling public of the train's approach. It was running at a rate of from 15 to 35 miles per hour, and its speed was not slackened on approaching the crossing. There is no evidence that the engineer, fireman, flagman, or brakeman was keeping a lookout. The whistling post is such a distance from the crossing that one approaching the crossing with their view obstructed by the section houses would have been in all probability unable to hear the whistle or the ringing of the bell in time to locate the train. The whistle was only blown twice and no bell was ringing, and such failure to sound the whistle or ring the bell alternately and continuously was calculated to induce the decedents, supposing them to be acquainted with the requirement or custom of ringing the bell or blowing the whistle when approaching the crossing, to believe that the train was not intending to approach or use the highway crossing. The section houses cut off the view of the backing train from the decedents until they got within, according to the evidence, twelve feet of the north-bound main track and no signal or warning was being given of the intention to use the crossing.

The situation and circumstances in the present case are very similar to those described by the evidence in Louisville & N. R. R. Co. v. Lucas' Adm'r, 98 S. W. 308, 310, 30 Ky. Law Rep. 359. In the Lucas case we said: "That, in view of unusually dangerous character of the crossing, the usual signal from whistle or bell, if given, would without a slackening of its speed, have been insufficient to warn the decedent of the coming of the train." The fact that the decedent before going on the crossing did not stop, look, or listen, did not constitute contributory negligence, nor authorize the giving of a peremptory instruction. Barksdale's Adm'r v. Southern Ry. Co., 199 Ky. 592, 251 S. W. 656. Whatever may be the rule elsewhere, it has been definitely settled by this court that it is not to be presumed, in the absence of evidence as to the care exercised by the person injured

or killed on the railroad where he had a right to be, that he carelessly or recklessly imperiled his own life. Cahill v. Cin. Ry. Co., 92 Ky. 345, 18 S. W. 2, 13 Ky. Law Rep. 714; Louisville, etc., Ry. Co. v. Goetz, 79 Ky. 442, 42 Am. Rep. 227; Louisville & N. R. R. Co. v. Lucas' Adm'r, supra. Negligence will never be presumed, it must first be proved, and the burden of proving contributory negligence in this case was on the appellees. Louisville & N. R. R. Co., v. Park's Adm'r, 154 Ky. 269, 157 S. W. 27; Louisville & N. R. R. Co. v. Treanor's Adm'r, 179 Ky. 350, 200 S. W. 634; Louisville & N. R. R. Co. v. Locker's Adm'rs, 182 Ky. 578, 206 S. W. 780; Piersall's Adm'r v. C. & O. Ry. Co., 180 Ky. 659, 203 S. W. 551; Louisville & N. R. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 747. The testimony that the decedents looked in the opposite direction from which the train was approaching, is conflicting. But even if they are looking in the opposite direction, the failure of appellees to ring the bell or sound the whistle, alternately and continuously was as we have said, calculated to induce them to believe that the train was not approaching or intending to use the highway crossing. The testimony that they looked in the opposite direction is the only evidence tending to establish contributory negligence or furnished by the evidence or deducible from the proven conditions and circumstances appearing in the case, and this certainly was not of a character to prove conclusively to reasonable minds that the decedents were negligent to such an extent as to authorize the giving of a peremptory instruction to the jury. Louisville & N. R. R. Co. v. Crockett's Adm'x, 232 Ky. 726, 24 S. W. (2d) 580.

In cases where evidence was that the crossing was obstructed by permission of the company or had been permitted by it for a reasonable length of time to be obstructed upon its right of way or by its own buildings, we have held that it was proper to submit to the jury the question as to whether or not the crossing was an unusually dangerous one, although it was an ordinary country crossing. The proven conditions at the crossing in the present case bring it within the rule laid down in the above cases.

Evidence of the frequent and constant use by the traveling public of this crossing was competent, the witnesses giving the facts upon which they based their statements, and of the rate of speed of the train was competent as bearing on the care used by the appellees com-

mensurate with the danger which must be observed by them. Big Sandy & Ky. River Railway Co. v. Blair, 224 Ky. 367, 6 S. W. (2d) 453, and cases cited. While we cannot say as a matter of law that the crossing was an extraordinarily dangerous one, there was evidence sufficient to submit the question and permit the jury, if it found it to be a dangerous one to consider the high degree of care required of all parties. If it was a dangerous crossing and much used by the traveling public, and this fact was known to those in charge of the train for a reasonable time prior to the happening of the accident, it was the duty of defendants, in addition to ringing the bell or sounding the whistle, to maintain a lookout to avoid injuring persons using the crossing, and to use such other means to avoid injuring those using it, including decedents, as in the exercise of a reasonable judgment by ordinary prudent persons operating the train might consider necessary. It was a reciprocal duty of the decedents to take such care for their own safety as a reasonably prudent person ordinarily exercises under circumstances similar to those proven in this case ordinarily use considering the character of the crossing, and the obstruction, if any, which prevented them from seeing or hearing the approaching train, or that they knew or by the exercise of ordinary care could have known that the crossing was dangerous, if it was dangerous, on account of the location of the obstructions, if any. If the decedents failed to exercise this degree of care, or if they knew the train was approaching the crossing and failed to take such care for their own safety as an ordinarily prudent man would have taken and by reason of such failure, and but for which they would not have been killed, then they would thereby be precluded from a recovery. Louisville & N. R. R. Co. v. Crockett's Adm'x, supra, and cases cited. Even if the decedents were negligent, still their estates may recover, if they were placed in peril by the negligent operation of the train, and if after their peril was discovered, or should have been discovered by those in charge thereof by the exercise of ordinary care in time to have avoided the collision. Louisville & N. R. R. Co. v. Lowe, 118 Ky. 273, 80 S. W. 768, 25 Ky. Law Rep. 2317, 65 L. R. A. 122; Doll v. Lou. Ry. Co., 138 Ky. 486, 128 S. W. 344; Illinois C. R. R. Co. v. Pierce, 175 Ky. 493, 194 S. W. 534; Louisville Ry. Co. v. Broaddus, 180

Ky. 307, 202 S. W. 654; Ross v. Louisville Taxi Co., 202 Ky. 828, 261 S. W. 590.

On the other hand, if the decedents were themselves negligent, and by reason of their own negligence were placed in peril, and those in charge of the train, with the means at hand, by the exercise of ordinary care, within the time and under the circumstances, could not have avoided the collision, in this event the appellees are not liable to their estates. Knapp v. Gibbs, 211 Ky. 278, 277 S. W. 259, and cases cited. From a careful examination and close scrutiny of the evidence, we are not prepared to say that the evidence points unerringly either to the conclusion that decedents did not use ordinary care in approaching the crossing, or that they knew the train was approaching and felt that they could cross ahead of it, and that their own contributory negligence brought about the collision. We are not convinced that Zelpha Cox had knowledge of facts constituting contributory negligence of her husband, if any, on his part, for sufficient time prior to the accident to enable her to take the requisite precautionary steps within time to have avoided her injuries, and that she failed to do so.

The law as to the right of the estate of Zelpha Cox to recover of appellees is in one respect different from that of the estate of S. T. Cox. It is shown by the evidence that S. T. Cox was operating the car at the time of the collision, and there is no evidence tending to show a relationship of master and servant or principal and agent between her and her husband in the operation of the automobile. The rule is that one riding in a vehicle as the guest of another is not responsible for the latter's negligence unless there exists such relationship as to make the guest responsible for the negligent acts of the others. Louisville Ry. Co. v. McCarthy, 129 Ky. 814, 112 S. W. 925, 927, 19 L. R. A. (N. S.) 230, 130 Am. St. Rep. 494. The driver of the vehicle was the husband, and we have often announced the doctrine that the negligence of the husband was not imputed in such cases to the wife, unless it should appear that in that particular instance the relationship of master and servant or principal and agent existed between them. "The mere fact that the one is the husband or the wife of the other should not render him or her answerable for the negligence of the other." Louisville Ry. Co. v. McCarthy, supra; Ray v. Ray, 196 Ky. 579, 245 S. W. 287; Living-

ston & Co. v. Philley, 155 Ky. 224, 159 S. W. 665, and cases cited. Milner's Adm'r v. Evansville Ry. Co., 188 Ky. 14, 221 S. W. 207; Hackworth v. Ashby, 165 Ky. 796, 178 S. W. 1074; Coughlin v. Mark, 173 Ky. 728, 191 S. W. 503; Louisville & N. R. R. Co. v. Staebler, 184 Ky. 730, 212 S. W. 919; City of Louisville v. Zoeller, 155 Ky. 192, 160 S. W. 500.

If S. T. Cox was guilty of negligence and Zelpha Cox had knowledge of the facts constituting his negligence, if any on his part, for sufficient time prior to the accident to have enabled her to take requisite precautionary steps within time to have avoided the collision, and she failed to do so, in that event his negligence may be imputed to her. But if such contributory negligence on his part, if any, arose suddenly without an opportunity on her part to exercise ordinary care to avoid its consequences and to provide against it for her own safety, in this event his contributory negligence cannot be imputed to her. If her death resulted solely from the negligence of her husband, in that event no recovery may be had against the appellees on account thereof. Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918C, 646; Barnes v. Eastin's Adm'r, 190 Ky. 392, 227 S. W. 578, and cases cited supra.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.