**ST. LOUIS, S. F. & T. RY. CO. v. ALLEN et al. (No. 8978.)**

(Court of Civil Appeals of Texas. Dallas. May 17, 1924. Rehearing Denied June 14, 1924.)

**1. Railroads ⬤➔350(7)—Negligence in not giving signals held for jury.**

Evidence *held* sufficient to go to jury in question of negligence in failing to give proper crossing signals.

**2. Railroads ⬤➔350(13) — Contributory negligence of truck driver held for jury.**

Evidence *held* insufficient to establish contributory negligence of truck driver killed at railroad crossing, as matter of law.

**3. Trial ⬤➔260(8)—Denial of instructions covered by others given held not error.**

Requested special charges in action for death of plaintiff's intestate at railway crossing *held* covered by others given and not improperly denied.

**4. Appeal and error ⬤➔1033(4)—Instruction submitting issue relative to crossing signal held erroneous but in favor of appellant.**

Instruction submitting issue whether motorman, by sounding whistle or ringing bell, "or otherwise," gave notice of approach of car,

*held* erroneous in use of phrase quoted, though in manner favorable rather than prejudicial to railroad.

**5. Railroads ⬤➔348(8)—Findings as to truck driver's negligence sustained.**

Evidence *held* to sustain findings that deceased truck driver, killed at railroad crossing, did not see approaching car in time to stop, and that he could not by exercise of ordinary care on his part have avoided the collision.

**6. Trial ⬤➔139(1), 140(1) — Credibility of witnesses and weight of testimony for jury.**

Credibility of witnesses and weight of testimony for jury.

**7. Railroads ⬤➔352—Findings as to contributory negligence held not conflicting.**

Finding that deceased, killed at railroad crossing, could not have discovered approaching train in time to have avoided collision, *held* not in irreconcilable conflict with finding that dump and vegetation alongside of track did not entirely obstruct view.

**8. Railroads ⬤➔352—Findings as to obstruction of view held not conflicting.**

Findings that dump and vegetation alongside railway cut did not entirely obstruct view from highway *held* not in irreconcilable conflict with finding that crossing was neither wholly nor partially obstructed from view.

**9. Railroads ⬤➔335(5)—Finding of unlawful speed as cause of injury essential to defeat recovery.**

Finding that deceased, killed at railway crossing, did not reduce speed to six miles per hour within 30 feet of crossing, as required by statute, and that such failure contributed to accident, *held* not to preclude recovery; there being no finding that such failure was the proximate cause, and the statute itself being involved.

**10. Trial ⬤➔365(2)—Findings of jury must be construed together.**

Findings of jury must be construed together.

**11. Appeal and error ⬤➔1060(1)—Trial ⬤➔ 129—Argument of counsel denouncing Workmen's Compensation Act held not prejudicial.**

In action for death wherein insurer of deceased's employer intervened, argument of plaintiff's counsel denouncing the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) "as one of the biggest frauds ever gotten out," and "a method by which big concerns can run over common people," *held* not prejudicial in view of the collateral nature of the argument, the fact that it was invited by opponent's argument, and the conservative amount of verdict.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by Lillie Allen and others against the St. Louis, San Francisco & Texas Railway Company, wherein Texas Indemnity Company intervened. Judgment for plaintiffs, and defendant appeals. Affirmed.

⬤➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Goree, Odell & Allen, of Fort Worth, and Freeman, McReynolds, Hay & Wolfe, of Sherman, for appellant.

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellees.

LOONEY, J. This suit was brought by Lillie Allen, surviving wife of Oda D. Allen, and W. V. and Iva D. Allen, his parents, against appellant, St. Louis, San Francisco & Texas Railway Company, for damages on account of his death. The deceased was at the time of his death, and had been for several months, employed by the Magnolia Petroleum Company as truck driver and salesman, and, on the day in question, left Sherman about 11 o'clock a. m. with a truck load of gasoline and kerosene oil, for a trip to the town of Gunter by way of the town of Dorchester. At about 11:30 a. m. a collision occurred between the truck driven by Allen and a north-bound motor car operated by the appellant. The collision occurred at the crossing of appellant's railroad with a public road, about one mile north of Dorchester, resulting in the ignition of the oils, the practical destruction by fire of the truck and motor car, and the death of both Allen, the truck driver, and C. E. Hamilton, the motorman on the car, and of more or less serious injuries to several passengers on the motor car.

The Texas Indemnity Company intervened, alleging that deceased was an employee of the Magnolia Petroleum Company and was insured by intervener under a policy issued by it to the Petroleum Company in accordance with the provisions of the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz); that Lillie Allen was sole beneficiary and that she and intervener had agreed on a settlement by which she was to be paid $11.40 per week for 360 weeks, amounting in the aggregate to $4,104 ($1,026 of which had been paid at the time of the trial).

Plaintiffs and intervener made a common fight, and the grounds of negligence relied on for recovery were that the crossing where the collision occurred, and the approaches thereto, were rough, full of holes, requiring close attention of the truck driver; that the railroad was so constructed that the motor car was not, for more than half a mile south of the crossing, in sight of the public road on either side of the railroad; that the railroad was constructed between embankments covered with grass, weeds, etc.; that these were high, thick, and dense, and obscured the view, so that one approaching the crossing from the north could not see south of the crossing on the railway track; that the track south was a heavy grade, declining towards the crossing; that the ground was clay, of a spongy nature, and deadened the sound of the moving car; that the motor car on the occasion in question was operated at a high and dangerous rate of speed, without proper lookout for travelers upon the highway and without giving any signal by bell or whistle or any sufficient notice to warn the deceased of the approaching motor car.

Appellant answered by general and special exception, general denial, and pleaded specially that Allen's death was proximately caused by his negligence: (1) In failing to keep a lookout, which, if he had done, he could have observed the approaching car in sufficient time to stop the truck and avoid the collision; (2) in failing to listen for the signals when he could have heard the signals and noise of the car in time to stop the truck and avoid the collision; (3) in propelling the truck negligently, recklessly, and carelessly, and in driving the same in front of the motor car in an effort to cross the track ahead of it; (4) in failing to reduce the speed of his car to 6 miles per hour within 30 feet of the crossing as required by statute, it being alleged that the view of the crossing was partially obstructed, which was known to Allen, or could have been known by the exercise of ordinary care; and (5) in driving and propelling the truck at a high rate of speed over the public road and across defendant's railroad track in such a manner as to come in collision with the motor car, the truck being loaded with gasoline and kerosene, substances highly explosive and inflammable, and that deceased knew, or by the exercise of reasonable diligence should have known, that said act was dangerous.

The case was submitted to the jury by the court on special issues, and, on their answers, the court rendered judgment in favor of W. V. Allen for $250 and Iva D. Allen, $250; and in favor of Lillie Allen and intervener, Texas Indemnity Company, for the sum of $12,500, with interest from date of judgment at the rate of 6 per cent. per annum, with the provision that on the payment by the indemnity company of $4,104, to be deducted from the $12,500, that said Lillie Allen should receive the balance, to wit, $8,396.

Appellant, in due time, filed motions to set aside the verdict and judgment, and for a new trial, all of which were overruled by the court, to which appellant excepted, gave notice of and has perfected its appeal, and assigned errors.

Our conclusions of fact and law will be stated in connection with and as a part of the discussion of appellant's assignments and propositions.

[1] Appellant's first contention is that the trial court erred in refusing to give its requested instruction for a verdict in its favor. This contention is based, of course, on the idea that the evidence was insufficient to raise the issue of appellant's negligence, and, further, that the evidence showed that de-

ceased was, as a matter of law, guilty of contributory negligence, proximately causing or contributing to his death. This assignment necessitates a review of the evidence bearing on these issues. The ground of negligence on which the jury convicted appellant was that the motorman operating the engine, as it approached the crossing, failed to give such notice by ringing the bell or sounding the whistle, or otherwise, as was sufficient to warn deceased of the approaching train in time for him, by the exercise of ordinary care, to have avoided the collision.

On this question twelve witnesses testified; three said they heard neither bell nor whistle as the train approached the crossing, four testified that they heard the distress signal given just preceding the collision, four testified that they heard only one whistling before the collision, and only one witness, Morris, testified that the regular crossing signals were given as the train approached, as well as the distress signal given just before the collision, and he alone of these witnesses testified that the bell was rung before the collision—the other eleven failed to hear or to testify to the ringing of the bell.

This evidence, in our opinion, clearly raised the issue of appellant's negligence and demanded the submission of the issues to the jury.

On the issue of contributory negligence, the evidence showed that for a short distance before reaching the crossing in question, deceased was driving his truck on a public road that ran practically parallel with and on the west side of the railroad; in other words, he was facing towards the south, or southwest, until he reached a point about 120 feet west from the crossing where the county road turned easterly to cross the track. South, or southwest of the crossing, the railroad track runs through a cut from which dirt, in constructing the road, had been piled on each side of the track, creating a dump, which, on the west side, beginning about 20 feet southwest of the crossing, gradually increased in height until it reached its maximum height of from 6 to 6½ feet about 150 feet distant from the crossing, which height it maintained for about 50 feet, and, from this point, the height gradually decreased until the dump ended about 425 feet southwest from the crossing.

On this dump there were growing, at the time, Johnson grass, horse weeds, and sunflowers; the grass was thick and about 4½ feet in height; the weeds and sunflowers varied in height to a maximum of 14 feet. The dump with its growth of grass and weeds was interposed between deceased and the approaching train, and, while it did not completely obscure, it did prevent a perfect view down the railroad track from the position of deceased. It was shown that the motor car stood 15 feet in height over the rails. The

witness Grizzard, who passed deceased a few minutes before the crossing was reached, testified that in approaching the crossing, as deceased was bound to have done, he looked constantly for a train, but failed to observe it until his automobile reached the track, when he saw the train some distance down the track approaching the crossing.

It was in evidence that in driving an automobile, more and closer attention is required than is ordinarily required in driving horses to a wagon or buggy. The evidence showed that the crossing was uneven, that holes existed, and that the rails stood up over the ties, rendering it rough. The deceased had, for several months, each week made trips from Sherman to Gunter by Dorchester, and presumably was acquainted with the crossing and surroundings. There stood at the crossing a large danger signal, upon which appeared the warning, "Railroad Crossing—Safety First."

It was shown that after the collision the motor car was burned, its front trucks were off the rails, and the emergency brake set. The truck and the body of deceased were found on the east side of the track, located from 25 to 40 feet northeast of the crossing. It was also shown by the testimony of witness Grizzard that, when he passed deceased a few minutes before the crossing was reached, he (deceased) was driving at a speed of from 10 to 12 miles per hour. There was also evidence to the effect that the track for three-quarters of a mile southwest of the crossing was straight and was slightly downgrade to the crossing; that the motor car on the occasion in question was running about 30 miles per hour, the speed of which was not checked until the application of the brakes in emergency at the time of the collision.

[2] This evidence, in our opinion, fell far short of showing that the deceased was guilty of contributory negligence as a matter of law. The question was a proper one for the jury, and the trial court did not err in refusing to direct a verdict for appellant. Washington v. M. K. & T. Ry. Co. 90 Tex. 314, 38 S. W. 764; Luten v. M. K. & T. Ry. Co. of Tex. (Tex. Civ. App.) 184 S. W. 798; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139.

Appellant's second contention is that the court erred in refusing to charge the jury on the issue of contributory negligence as requested in its special charge No. 3, as follows:

(a) "Did deceased, Oda Allen, drive his truck on the railroad track and in front of the motor car just at and prior to the time of the collision in question? If you have answered the above question, 'Yes,' then you will answer this question:

(b) "Was the said Oda Allen guilty of 'negligence' as defined in the court's charge in driving said truck on said track at the time

of the collision in question? If you have answered the two preceding questions, 'Yes,' then you will answer this question:

(c) "Did such negligence, if any, cause or contribute to cause the collision in question?"

As shown above, the evidence clearly raised the issue of contributory negligence, and unless the court in its main charge, and in special charges given at the request of appellant, properly submitted the issue of contributory negligence, it was error to refuse to charge the jury as requested.

To determine this question, it is necessary to consider the issues submitted by the court, both in its main charge and in special charges at the request of appellant.

The court in its main charge correctly defined "negligence," "contributory negligence," "ordinary care," and "proximate cause." In the main charge the following were submitted and answers given:

Question No. 1. "Did the motorman operating the engine of the motor car, as it approached the crossing, by sounding the whistle or ringing the bell, or otherwise, give such notice of the approach of said car as was sufficient to warn the deceased, O. D. Allen, of the approach of the train in time for him, by the exercise of ordinary care, to have avoided the collision? To which the jury answered, 'No.'"

Question No. 2. "Were the operatives upon the cars guilty of negligence in failing to give such notice as is inquired about in question No. 1? To which the jury answered, 'Yes.'"

Question No. 3. "Was such negligence, if any you find, the proximate cause of deceased, O. D. Allen, being injured? To which the jury answered, 'Yes.'"

In response to these questions, the jury found appellant guilty of negligence that was the proximate cause of the death of Allen and warranted the verdict of the jury, unless appellees were precluded from recovery by reason of the contributory negligence of deceased.

This issue was submitted in the main charge as follows:

Question No. 7. "Did the deceased see or hear the approaching car in time, by the exercise of ordinary care upon his part, to have avoided the collision? To which the jury answered, 'No.'"

Question No. 10. "If you have answered, 'No,' to question No. 7, then state in answer to this question whether or not deceased could have discovered the approaching train in time to have avoided the collision by the exercise of ordinary care upon his part. To which the jury answered, 'No.'"

Bearing on the issue of contributory negligence, the court, at the request of appellant, submitted the following:

"Did the deceased, Oda Allen, before he attempted to cross the defendant's railroad track, see the motor car approaching? To which the jury answered, 'No.'"

Also special charge No. 4, as follows:

"Did the deceased, Oda Allen, see the motor car approaching prior to the time he attempted to drive across the defendant's railroad track in time to stop his truck and avoid the collision? To which the jury answered, 'No.'"

Thus it conclusively appears that the jury found, by the exercise of ordinary care, the deceased could not have discovered the approach of the train and could not by the exercise of ordinary care have avoided the collision, and, by these findings, necessarily they acquitted deceased of contributory negligence in the respect covered by the special charge under consideration.

[3] It was not only not necessary, but, in fact would have been improper, for the court to have reiterated in substance the charges already given on this issue.

[4] Appellant further insists that the court erred in submitting question No. 1 of its main charge, in this, that the question implied that a duty rested on appellant's motorman to give some notice of the approach of the train other than the blowing of the whistle and the ringing of the bell, and that failure to give notice "otherwise" would be negligence.

It is our opinion that if the court committed error by the use of the phrase "or otherwise" in the charge, it was in favor of and not adverse to appellant.

The question was submitted as follows:

"Did the motorman operating the engine of the motor car, as it approached the crossing, by sounding the whistle or ringing the bell, or otherwise, give such notice of the approach of the car as was sufficient to warn the deceased, O. D. Allen, of the approach of the train in time for him, by the exercise of ordinary care, to have avoided the collision?"

It will be noted that the question is in the alternative and is submitted in such form that, if the motorman was believed by the jury to have been guilty of negligence in failing to sound the whistle, and, further, in failing to ring the bell, still, under the charge, appellant could have escaped if the jury believed the motorman had otherwise given notice of the approach of the car.

Appellant's contention in this respect is overruled.

[5] The sufficiency of the evidence to sustain the findings of the jury in answer to question No. 7 of the court's main charge and question No. 1 of special issue No. 4 requested by appellant, is challenged. Question No. 7 will be reproduced, and reads as follows:

"Did the deceased see or hear the approaching railway car in time, by the exercise of ordinary care upon his part, to have avoided the collision? To which the jury answered, 'No.'"

Question No. 1, Special issue No. 4, requested by appellant, is as follows:

"Did deceased, Oda Allen, see the motor car approaching prior to the time he attempted to drive across defendant's railway track in time to stop said truck and avoid the collision? To which the jury answered, 'No.'"

[6] The evidence was, in our opinion, sufficient to warrant the findings of the jury. It was clearly within the province of the jury to judge of the credibility of the witnesses, the weight to be given their testimony, and, further, to give consideration alone to the evidence in regard to the position of deceased preceding and at the time of the collision most favorable to appellees, and to reject any evidence favorable to the defendant. This court, in reviewing the case, must, and will, respect the right of the jury to reconcile conflicts in the evidence and determine the facts. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139.

[7] Appellant finds irreconcilable conflict between the answers of the jury to questions Nos. 4 and 10 of the main charge hereinbefore quoted.

We find no real conflict in these answers. Whatever apparent conflict may exist is easily reconcilable from the evidence; but, in our opinion, there is no conflict in fact. The evidence showed that there was a dump from 6 to 6½ feet high on the west side of the track upon which grew grass 4½ feet high, and weeds and sunflowers interspersed to a height of 14 feet. The train approached the crossing in question on a slight downgrade, without warning, or at least without sufficient warning. In driving the truck, deceased was required, for his own and the safety of the cargo of oils, to give close attention to the operation of the truck and to the roadway. It is plainly inferable that, if he ever discovered the approaching car, which he may have done, he was almost upon the railroad crossing at the time, and under circumstances that naturally and humanly caused excitement, fright, and confusion. The deceased, thus drawn into a perilous position, through the negligence of appellant, called upon at a moment's notice to choose between desperate alternatives cannot be charged with contributory negligence, although he may have wildly or negligently adopted the more perilous alternative and suffered in consequence. He possibly could have stopped the truck after discovering the approaching train, but there was no time to deliberate and choose the path of greater safety. It is plain that he endeavored to cross and had all but succeeded when struck, as the car and his dead body were found on the east side of the track from 25 to 50 feet above the crossing. If the speed of the oncoming motor car had been checked just a degree and delayed just an instant, deceased would have made a successful crossing. The failure of the motorman to discover Allen, and to check the speed of the car, was due to negligence, and, although these grounds of negligence were not submitted to the jury, they were adequately pleaded and are supported by evidence.

The question for determination was, not whether it was at all possible for the approaching train to have been seen by the deceased as was implied in the issue submitted, but whether, by the exercise of ordinary care on his part, he could, situated as he was, have discovered the train in time to have avoided the collision.

The jury answered that the dump and vegetation growing thereon were not of such height as to obstruct the view of deceased and prevent him from seeing the train as it approached the crossing. This was a correct answer to the question propounded. The view of the deceased, while obstructed, was not wholly obscured. He could no doubt, by the exercise of extraordinary care, have seen the top of the approaching car over the dump and through the grass and high weeds; but he was not called upon to exercise this high degree of care for his safety.

[8] It is further contended by appellant that the answer of the jury to question No. 4 is in conflict with their answer to special issue No. 5, as follows:

"Was the view of the railroad crossing either wholly or partially obscured to the driver of a motor vehicle approaching the same from the north and going south? To which the jury answered, 'No.'"

We find no conflict. Question No. 4 was in regard to the dump and vegetation growing thereon located on the west side of the track southwest of the crossing, while question No 5 is confined alone to the railroad crossing. There was no evidence showing that the railroad crossing proper was in any way obstructed, or that the view thereof was either wholly or partially obscured. We therefore disagree with appellant on this proposition.

[9] Counsel for appellant say that another irreconcilable conflict is this: The jury found that the deceased failed to reduce the speed of the motor truck to not exceeding 6 miles per hour at a point not nearer than 30 feet from the crossing before he attempted to drive thereon, and that this was the proximate cause of the injury.

Question No. 2 of special issue No. 5 requested by appellant reads as follows:

"Did the deceased, Oda Allen, reduce the speed of the motor truck which he was driving at some point not nearer than 30 feet to the crossing to a speed not to exceed 6 miles per hour before driving onto said crossing? The jury answered this question in the negative, and they were then asked the following: Did his failure to so reduce the speed of such motor truck to not less than 6 miles per hour cause or contribute to the collision in question? To this, the jury answered, 'Yes.'"

[10] It thus appears that the jury found that deceased did not reduce the speed of the truck to less than 6 miles per hour at a point not nearer than 30 feet of the crossing, and that his failure so to do caused, or contributed to, the collision in question; but the jury did not find that this was the proximate cause of the accident. The answer of the jury is not, in our opinion, in conflict with any other answer they gave. The fact that the speed of the truck was not reduced to 6 miles per hour may have contributed, and doubtless did, to the accident just as other precedent acts of deceased may have contributed; but the answer under consideration must be construed and reconciled with other answer of the jury, to the effect that deceased could not, in the exercise of ordinary care, have prevented the collision.

In the case of Hines, Director General, v. Richardson (Tex. Civ App.) 232 S. W 889, the court, in disposing of a very similar question to the one now under consideration, said:

"Under the findings of the jury, however, the statute is not applicable, and we think the evidence abundantly sustains the finding that the crossing was neither wholly nor partially obscured. It is true the jury also found that the deceased, had he reduced the speed of his car to 6 miles per hour, could, in the exercise of ordinary care, have crossed the track. This finding is not irreconcilable with that which acquits him of contributory negligence. It may be true that he could have crossed in safety, had he been traveling at that or even a lower rate of speed, for he might as a result have been delayed so as to prevent a collision. It cannot be said as a matter of law that a person of ordinary prudence would have taken that degree of care under the circumstances. The jury might have concluded that the exercise of that precaution was an extreme degree of care not required of an ordinarily prudent individual undertaking to cross under those particular conditions."

Also, in Payne v. Young (Tex. Civ. App.) 241 S. W. 1097, the court, in passing upon a similar question, used this language:

"It is not enough that plaintiff may have been guilty of negligence in not observing the provisions of the statute mentioned in approaching the crossing. To be a bar to his right to recover, the negligence must also have been the proximate cause of his injury"—citing authorities.

In the same case the court said:

"The court [trial court] found that both appellant and appellee were guilty of negligence. Where an accident occurs at a railroad crossing by reason of a collision between the train and an automobile, and it appears that the railroad and the automobile driver are both guilty of negligence, it is a question of fact, to be found by the jury, and, in the absence of a jury, by the court, as to which negligence is the proximate cause of the injury"—citing authorities.

Aside from this view, however, the statute invoked by appellant was held invalid by the Court of Civil Appeals of the Galveston District in Graham v. Hines, 240 S. W. 1015, in which the Supreme Court refused a writ of error.

[11] The last proposition urged by appellant is that the language used by Col. C. B. Randell, one of the attorneys for appellees, in his concluding argument, in denouncing the Workmen's Compensation Act "as one of the biggest frauds ever gotten out," and "a method by which big concerns can run over the common people," was not a proper discussion of any issue, was designed and calculated to excite prejudice and passion in the minds of the jury, and to divert them from an unprejudiced consideration of the case.

The qualification appended by the trial judge to the bill of exceptions shows that the remarks of counsel were invited by the argument of counsel for appellant. The criticism was not leveled at appellant, but was a denunciation of the Workmen's Compensation Act under which the intervener, the indemnity company, was proceeding. The remarks of counsel were not, in our opinion, calculated to, nor did they, prejudice the jury adversely to appellant. The verdict, conservative in amount, forbids the idea that it was influenced by passion or prejudice.

After a careful consideration of the assignments and propositions urged by appellant, because we find no error, they should be and are hereby overruled, and the judgment of the court below is affirmed.

Affirmed.