## ST. LOUIS, S. F. & T. RY. CO. v. ALLEN et al. (No. 722–4301.)

(Commission' of Appeals of Texas, Section A. Dec. 10, 1925.)

Trial ⬡⟹350(7)—Evidence held to require submission of issue as to truck driver's contributory negligence in not exercising due care in approaching and going onto railroad crossing.

Pleadings and evidence *held* to raise issue of truck driver's contributory negligence in failing to exercise due care in approaching and going onto railroad crossing, and refusal to submit special issues covering it was error.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by Lillie Allen and others against the St. Louis, San Francisco & Texas Railway Company. Judgment for plaintiffs affirmed by the Court of Civil Appeals (262 S. W., 1066), and defendant brings error. Judgment of Court of Civil Appeals and that of trial court reversed and remanded.

W. L. Evans and Goree, Odell & Allen, all of Fort Worth, and Freeman, McReynolds & Hay, of Sherman, for plaintiff in error.

B. F. Gafford, Randell & Randell, and Head, Dillard, Smith, Maxey & Head, all of Sherman, for defendants in error.

---

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HARVEY, P. J. On July 29, 1920, a truck being driven by O. D. Allen came into collision with a motor car of the plaintiff in error at a public crossing of the railway track of the latter. In such collision said Allen was killed, and his widow brought this suit for damages. In view of another trial herein, we shall notice only the matter of the trial court's refusal to submit certain special issues herein mentioned relating to the issue of contributory negligence on the part of Allen.

The plaintiffs in error, among other things, charged in their pleadings that Allen was guilty of contributory negligence which proximately contributed to his death, in the following particulars: (a) That he negligently failed to keep a lookout for approaching trains as he approached the crossing, and that, if he had not been negligent in this respect, he could and would have discovered the approaching motor car in time to avoid the collision; (b) that he propelled the truck negligently, recklessly, and carelessly, and negligently drove same in front of the motor car in an effort to cross the track ahead of it; (c) that he negligently drove the truck at a high rate of speed over the public road and onto the railway crossing, in such a manner as to come into collision with the motor car, the truck being loaded with gasoline and kerosene, which were highly explosive and inflammable, and that Allen knew, or by the exercise of reasonable diligence should have known, that said act was dangerous.

In support of, and bearing upon, these issues, testimony was adduced, the substance of which briefly stated, is as follows:

Allen, the deceased, was employed by the Magnolia Petroleum Company as a driver of a motor truck. He had been so employed about three months. One of his regular routes by truck in hauling gasoline and oils in making deliveries to customers was from Sherman to Gunter by way of Dorchester and return. He made this run three times each week; usually left Sherman about 7:30 a. m., and traveled the public road, or pike, from Sherman to Gunter, by way of Dorchester. On the morning of July 29, 1920, while driving his truck, loaded to capacity with 200 gallons of gasoline and 120 gallons of kerosene, a collision occurred between the truck which he was driving and a motor car being operated over appellant's road. The gasoline and oil exploded, ignited, Allen and the engineer on the motor car were killed, a number of passengers injured, and both truck and motor car were destroyed. The collision occurred near noon, at a point about one mile north of Dorchester, where the public road crosses defendant's track. The railroad track for some distance north of the crossing and for three-quarters of a mile south of it was straight. North of the crossing the public road ran for about a mile on the west side of the railroad track and paral-

lel with it. This road the deceased, Allen, was traveling in a southward direction, toward Dorchester. At a point about 120 feet west of the track, the public road turns easterly and across the track, then ran in a southerly direction on the east side of the track. South of the crossing the railroad track was in a cut. Dirt had been piled on each side of the track in building the railroad. The dump began some 50 feet south of the crossing; its height gradually increasing until at about 200 feet south of the crossing it was, by actual measurement, 6 feet above the rails, this being its highest point. Grass, weeds, and vegetation were growing on the dump in places, from 4 to 4½ feet high, but not high enough to obscure a motor car or train being operated on the railway track.

The railway track south of the crossing was straight and upgrade for about three quarters of a mile; the grade being such that at a point 2,500 feet south of the crossing the track was 17½ feet higher than at the crossing, the ascending grade going south being approximately 8 inches to the 100 feet.

Customarily, Allen left Sherman about 7:30 in the morning, but on this occasion he was delayed on account of repairs to his truck, and left about 11 a. m. Immediately prior to the collision, a motor car was running north from Dorchester towards Sherman, approaching the crossing at a speed of about 30 miles per hour. The whistle on the motor car was sounded in emergency before reaching the crossing. Before reaching the point where the road turned east across the track, Allen was driving the truck loaded with gasoline and kerosene south along the public road on the west side of the track at a speed of 10 or 12 miles per hour. As shown by the evidence, and found by the jury, the dump and vegetation growing on it were not of sufficient height to obstruct, and did not obstruct, his view or prevent him from seeing the motor car as he approached the crossing.

The motor car was 15 feet above the rail, and its height above the rail at the crossing increased 8 inches each 100 feet south of the crossing on account of the ascending grade. The line of vision of Allen from his seat on the truck was 7 feet above the ground. The dump at the highest point 200 feet south of the crossing was 6 feet above the rails, and vegetation growing thereon from 4 to 4½ feet high.

There was also testimony to the effect that, when Allen was about 100 feet from the crossing, he increased his speed, and drove onto the crossing in front of the oncoming motor car, and the collision followed.

In answer to apposite special issues submitted to them, the jury found (a) that Allen did not see or hear the approaching motor car in time, by the exercise of ordinary care on his part, to avoid the collision; (b) that Allen, before he attempted to cross the rail-

road track, did not see the motor car approaching; (c) that Allen did not see the motor car approaching prior to the time he attempted to drive across the railroad track in time to stop the truck and avoid the collision; (d) that the dump on the west side of the track and the vegetation growing thereon was not of such height that it obstructed the view of Allen and prevented him from seeing the approaching motor car; and (e) in special issue No. 10, the jury were asked to state "whether or not deceased could have discovered the approaching train (motor car) in time to have avoided the collision by the exercise of ordinary care on his part." The jury answered "No" to the last question.

We have rendered into narrative form the answers of the jury relating to the issues of contributory negligence, and in doing so we have followed literally the only questions on that subject which were submitted to and answered by the jury in accordance with the court's charge. It will be observed therefore that none of these special issues which were submitted to the jury involves a finding by the jury as to whether or not the deceased exercised ordinary care to discover the approach of the motor car, or whether or not he exercised ordinary care in going upon the crossing under the circumstances he did. Such issues involve only the questions whether deceased saw or heard the approaching motor car in time to avoid the collision, by exercising ordinary care after he did discover the approach of same. What degree of care he used in approaching and going onto the crossing is not found by the jury; nor were they authorized to pass on that question under the court's charge. The plaintiffs in error were entitled to have that question submitted to the jury under the pleadings and testimony in this case. They prepared and duly requested the court to give in charge to the jury appropriate special issues covering the latter subject, which were refused by the court. Such refusal was error. Fox v. Hotel Co., 111 Tex. 461, 240 S. W. 517; Railway v. Casseday, 92 Tex. 526, 50 S. W. 125.

The fact that Allen was driving a truck heavily loaded, and that such load consisted of highly inflammable and explosive substances, and the fact that his view of the approaching motor car was not obstructed, together with other facts and circumstances in evidence, formed a basis upon which the jury might have properly founded a conclusion that Allen drove upon the railroad track without taking such precautions as ordinary prudence required in such circumstances. These requested special issues presented that issue, and should have been given. Not having been given, the plaintiff in error was denied the substantial right to have the jury pass on a legal defense which it had pleaded and adduced evidence to support.

Because of said error committed in refus-ing such special issues, we recommend that the judgment of the Court of Civil Appeals and that of the trial court be reversed, and the cause be remanded.

CURETON, C. J. The judgment recom-, mended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.