ST. LOUIS, S. F. & T. RY. CO. v. ALLEN et al. (No. 2837.)

Court of Civil Appeals of Texas. Amarillo. June 1, 1927.

Rehearing Denied June 22, 1927.

**1. Trial ⬳351(2)—Refusal to submit incorrect special issue, not presenting affirmative defense, held not error.**

In action for death of a motor truck driver at railroad crossing, where issues submitted presented plaintiff's charges of negligence as pleaded, refusal to submit defendant's incorrect special issue presenting only defensive matter to that alleged by plaintiff, but not an affirmative defense, *held* not error.

**2. Trial ⬳351(2)—Request for incorrect special issue, not presenting affirmative defense, held insufficient to require court to instruct on degree of care of motorman.**

In action for death of a motor truck driver at a crossing, defendant's special issue that motorman could presume deceased, in approaching crossing, would exercise ordinary care, and was required only to exercise ordinary care in operation of the car, was properly refused, as being on weight of evidence, but was insufficient to call court's attention to necessity for giving further charge on motorman's necessary degree of care.

**3. Appeal and error ⬳274(4)—Court cannot be put in error for failure to submit correct issue, where exception was only to refusal to submit issue tendered.**

Where issue tendered on degree of motorman's care was on weight of evidence, and insufficient to require trial court to submit correct issue thereon, court cannot be put in error for failure to submit correct issue where defendant's exception was only to court's refusal to submit issue tendered.

**4. Trial ⬳351(2)—It is not incumbent on trial court to reconstruct erroneous issue, in order to correctly submit issue desired.**

In personal injury action, it was not incumbent on trial court to reconstruct erroneous issue tendered, in order to correctly submit issue desired by defendant.

**5. Trial ⬳350(7)—Evidence held not to authorize submission of issue whether deceased drove motor truck at high rate of speed onto railroad crossing.**

In action for death of a motor truck driver at a crossing, evidence *held* not to authorize submission of issue of decedent's negligence in driving his truck at high rate of speed over a public road, and onto the railroad crossing, in such manner as to collide with defendant's motorcar.

**6. Appeal and error ⬳1097(5)—Ruling of Supreme Court on former appeal that issue of negligence should have been submitted is binding on Court of Civil Appeals on same facts.**

In action for death of motor truck driver at a railroad crossing, where on former appeal

---

the Supreme Court approved the holding of the Commission of Appeals that the issue of decedent's negligence should have been submitted to the jury, the Court of Civil Appeals must follow such holding, unless the evidence before it presents a different state of facts from those considered on former appeal.

**7. Appeal and error ⬅═999(3)—Jury having found that truck driver's view of railroad crossing was obstructed, the Court of Civil Appeals cannot pass on such question.**

In action for death of a motor truck driver at a railroad crossing, where jury found on evidence that decedent's view of the railroad crossing was obstructed by the dump on the side of the track with weeds and vegetation growing thereon, the Court of Civil Appeals cannot pass on such question.

**8. Railroads ⬅═350(3)—Railroad's negligence in permitting grass and weeds to grow on embankment held for jury.**

In action for death of a motor truck driver at a railroad crossing, whether defendant was negligent in permitting grass and weeds to grow and be on the embankment on the side of the railway, and whether such obstruction constituted negligence, *held* a question of fact, under evidence, for jury.

**9. Trial ⬅═232(3)—Admonitory charge, not intimating what jury's decision on issue should be, and containing nothing to prejudice either party, held not error.**

In action for death at a railroad crossing, admonitory charge that jury must answer questions only from testimony introduced, not giving least intimation of what jury's decision on question submitted should be, nor containing anything to prejudice of either party, *held* not error.

**10. Appeal and error ⬅═273(6)—Exception to admonitory charge must show that language used was prejudicial to some right.**

Exception to admonitory charge must show that language used by the court was prejudicial to some right of a party.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by Lillie Allen and others against the St. Louis, San Francisco & Texas Railway Company. From a judgment for the named plaintiff, defendant appeals. Affirmed.

Freeman, McReynolds & Hay, of Sherman, Goree, Odell & Allen, of Fort Worth, and E. T. Miller, of St. Louis, Mo., for appellant.

B. F. Gafford, Head, Dillard, Smith, Maxey & Head, and Randell & Randell, all of Sherman, for appellees.

RANDOLPH, J. This is the second appeal in this case. The opinion of the Dallas Court of Civil Appeals will be found in 262 S. W. 1066, and that of the Commission of Appeals in 278 S. W. 186. The statement made by the Court of Civil Appeals on the former appeal is so full and complete that we do not feel it is necessary to again restate the case in full, but we will only make such statement as is necessary to show the character of the action, and such further statements as are necessary to make clear the question discussed.

Mrs. Lillie Allen, joined by W. V. Allen and Iva D. Allen, brought this suit against appellant to recover damages for the death of O. D. Allen, alleged to have been caused by the negligence of appellant. Lillie Allen is the widow of the deceased, and W. V. Allen and Iva D. Allen his father and mother. The Texas Indemnity Company intervened in the suit to recover an amount paid to Mrs. Allen by it, in settlement with her under the provisions of the Workmen's Compensation Act. On trial of the case, judgment was rendered that the plaintiffs W. V. Allen and Iva D. Allen take nothing by their suit, and that plaintiff Lillie Allen and intervener Indemnity Company recover against appellant the sum of $13,625, divided as follows: Intervener, $4,104; Mrs. Allen, $9,521. From this judgment, appeal has been duly prosecuted to this court.

[1, 2] Appellant's attorney, in the oral argument before this court, abandoned the claim of error under propositions Nos. 1, 2, and 3. He also concedes that the special issue No. 2, refused by the trial court, and on which refusal error is predicated under his fourth proposition, is subject to the objection that it is on the weight of the evidence. The special issue is as follows:

"You are instructed that the motorman operating the motorcar had a right to presume that the deceased, O. D. Allen, in approaching said crossing, would exercise ordinary care for his safety, and in blowing the whistle as he approached said crossing. Said motorman was only required to exercise ordinary care in the operation of said car, to give reasonable notice of the approach of said car, to persons of ordinary prudence who might be approaching the same."

It will be clearly seen that this instruction is a general charge, and is also on the weight of the evidence, but appellant insists that, while this may be true, yet this issue, so tendered, was sufficient to call the court's attention to the necessity for submitting the issue of the degree of care which was required of the motorman.

The trial court, upon the degree of care required to be exercised by the motorman, submitted the following issues:

"Question No. 1. Could the motorman, operating the motorcar on the occasion in question, in the exercise of ordinary care, give a signal by blowing the whistle of the motorcar as it approached the crossing that would be reasonably sufficient to warn a person of ordinary prudence approaching the crossing of the approach of the motorcar in time for him, by the

exercise of ordinary care, to avoid a collision at said crossing? Answer: Yes.

"Question No. 2. Did the motorman fail to give signals by blowing the whistle when the motorcar was such distance from the crossing as was reasonably sufficient to warn an ordinarily prudent person approaching the crossing of the approach of the motorcar in time for him, by the exercise of ordinary care, situated as deceased was, to avoid the collision? If you answer question No. 2 'Yes,' answer No. 3; If you answer No. 2, 'No,' you need not answer No. 3. Answer: Yes.

"Question No. 3. Was such failure of the motorman to blow the whisle, if you find he did so fail, negligence as this term is defined herein? If you answer question No. 3, 'Yes,' you will answer No. 4; if you answer No. 3 'No,' you need not answer No. 4. Answer: Yes.

"Question No. 4. Was such negligence, if any, of the motorman, a direct and proximate cause of the collision and death of the deceased? Answer: Yes.

* * * * * * *

"Question No. 8. Could the motorman on the motorcar, in the exercise of ordinary care, by keeping a lookout as the motorcar approached the crossing, see a person approaching the crossing as deceased approached the same? Answer: Yes.

"If you can answer question No. 8 'Yes,' you will answer No. 9; if you answer No. 8 'No,' you need not answer No. 9.

"Question No. 9. Did the motorman on the motorcar fail in the exercise of ordinary care to keep a lookout as the motorcar approached the crossing to see if there was any one on or approaching the crossing? Answer: Yes.

"If you answer question No. 9 'Yes,' you will answer No. 10; if you answer No. 9 'No,' you need not answer No. 10.

"Question No. 10. Was the failure of the motorman, if any, to keep a lookout as inquired about in question No. 9, negligence? Answer: Yes.

"If you answer question No. 10 'Yes,' you will answer No. 11; if you answer No. 10 'No,' you need not answer No. 11.

"Question No. 11. Was such negligence, if any, a direct and proximate cause of the collision? Answer: Yes."

These issues present to the jury the plaintiffs' charges of negligence as pleaded by them, and covered such charges. The special issue requested only presents a defensive matter to that alleged by plaintiffs, and does not present an affirmative defense; hence it was not affirmative error on the part of the trial court in refusing to submit such incorrect instruction, nor was it sufficient to call his attention to the necessity for giving any further charge, or to give any further issue upon the degree of care necessary to be exercised by the motorman.

[3, 4] Again, the appellant took no exception to the failure of the trial court to submit a correct issue to the jury, presenting such contention of appellant. The exception is only taken to the action of the trial court in refusing to submit such issue. It was not incumbent on the trial court to reconstruct the erroneous issue tendered him, in order to correctly submit the issue desired by appellant. Burnham, Hanna, Munger & Co. v. Logan, Evans & Smith, 88 Tex. 1, 29 S. W. 1067.

[5] Appellant, by its proposition No. 5, alleges error on the part of the trial court in the refusal to submit the following special issue:

"Did the deceased, O. D. Allen, drive the truck at a high rate of speed over the public road and on the railroad crossing, in such manner as to come in collision with the motorcar?"

The question as here presented is on an entirely different base from that presented on the former trial. But, in the first place, if this was a matter of first consideration with us, we would be compelled to hold that there is no evidence justifying the submission of the issue. The evidence amounts to this: Three-fourths of a mile from the crossing, the scene of the wreck, the deceased was driving his truck at a speed of 10 or 12 miles an hour. There is no evidence whatever as to the rate of speed he was maintaining when he approached the crossing; only that, as he approached it, he "seemed" to get a "little faster." A negro passenger on the motorcar, testifying relative to seeing the deceased travel along the road just before and at the time of his approach to the crossing, says:

"I saw the truck on the road on the left-hand side of the track. When I first saw the truck in the road, the motorcar was about at the private crossing. As near as I can I will tell the truth about the location of the truck when I first saw it. When I first saw the truck it was just beyond the mail box, north of the mail box in that public road, and when the sharp whistles began to blow it was on this side of the mail box, the south side of the mail box, and he was going south and the motorcar north. The motorcar was near the private crossing when I first saw the truck, and the truck was north of the mail box. The truck was going south. I continued to see that truck as it drove down the road. When I first saw the truck, I kept watching it, and, after he blowed for this private crossing, he blowed again, and the truck was still coming, and when this little fine whistle commenced to blow this fellow driving the truck looked like he raised his head, and I know the truck seemed like it got faster to me. When the fine whistles were blown, and he raised his head, the truck was right between the mail box and the railroad, and was just in the act of turning east to cross the railroad; just in the act of turning that curve in the road, I reckon, I would not be positive; it was pretty close. I saw the fellow driving the truck raised his head, and, when he raised his head, he looked towards the railroad; the way he was going, he looked south; he looked in the direction of the motorcar; he raised his head in that direction and come right straight to it. I do not say he was looking at the motorcar, but he looked in that direction, and then it looked like the truck got faster; at the time the truck driver raised his head and looked, and

.the car got faster, the fine whistles were blow-.ing."

[6] This is the testimony upon which is predicated the claim that such special issue should have been submitted to the jury for their determination, whether or not deceased was driving his truck at a high rate of speed over the railroad crossing "in such a manner as to come in collision with the motorcar." But, as the honorable Commission of Appeals has held that the issue should have been submitted on trial of the case on the former appeal, and the opinion of that court having the express approval of the Supreme Court, we are compelled to follow that holding, unless the record of the case now before us presents such a difference in the facts from the facts considered by the Commission of Appeals on the former appeal as renders such decision inapplicable to the question as here presented.

The court on this trial gave to the jury the following special issue covering the question of care on the part of the deceased in driving the truck onto the railroad crossing:

"Question No. 12. Was the deceased, O. D. Allen, guilty of negligence as herein defined, in driving said truck on said track, at the time of the collision and *at the time and in the manner he drove same* on the occasion in question?"

We have italicized the words of such special issue as, in our opinion, cover the rate of speed at which deceased was traveling in crossing the track. Again, it appears from the opinion of the Commission of Appeals that on the former trial the jury found that the dump on the west side of the track, with weeds and vegetation growing thereon, was not of such height that it obstructed the view of the deceased, and prevented him from seeing the approaching motorcar.

[7] On this trial the jury finds that his view was obstructed by such dump and grass and weeds. The jury having found this fact upon evidence submitted to them, we are not authorized to pass upon such question by repudiating such finding. Accepting it as a fact that the view of deceased was so obstructed, and acting upon the further fact that the jury found deceased did not see the car approach, the question in our opinion becomes unimportant. The fact that his truck was loaded with gasoline and kerosene, which might explode when brought in contact with a spark or flame, might be of consequence where the safety of others was concerned, and might require of him a greater degree of care for the safety of others, but we cannot see that, because his truck was loaded with gasoline and kerosene, any greater degree of care was required of deceased for his own safety than would be required without the truck being loaded with such explosives. In either condition, death stared him in the face when he got on the track of the advancing cars.

[8] The trial court's action in submitting the following issue:

"Was the defendant guilty of negligence, as that term is defined herein, in permitting grass and weeds to grow and be on the embankment on the west side of the railway to the extent and height, if any, you find and believe from the evidence same were there, at the time of the collision?"

—is assigned as error. The negligence of appellant in permitting such weeds to grow on the embankment, and to obstruct the view of any one approaching the crossing, was pleaded by the plaintiffs. As pleaded and proved, the appellant permitted its right of way to grow up with weeds, so as to obstruct the view of persons approaching the crossing, and this was actionable negligence. Railway Co. v. Parks, 154 Ky. 269, 157 S. W. 27; Railway Co. v. Treanors, 179 Ky. 337, 200 S. W. 634; Railway Co. v. Breedens, 111 Ky. 729, 64 S. W. 667. It was a question of fact, necessary to be submitted to the jury, whether, under the circumstances, the obstruction was such as to constitute negligence. Railway Co. v. Rogers, 91 Tex. 56, 40 S. W. 956; Railway Co. v. Murphy, 46 Tex. 356, 26 Am. Rep. 272.

[9] The appellant submits as error the following oral charge, given to the jury by the trial court, at the time he delivered his written charge to them:

"The Court: Mr. Trotter, I appoint you foreman of this jury. Now gentlemen of the jury, I am going to send you to the jury room to answer these questions. You will have this blank form for your answers to the questions. I also hand you some papers for you to examine, if you desire.

"Now, gentlemen of the jury, as I told you in the outset, you and I know nothing about this case, except what we get from the witness stand. You must answer these questions from the testimony introduced, and nothing else. I seek to impress that on you for the reason that it is your desire and mine that the case should be tried properly, and should be tried so that, when the findings of the jury are returned and the court enters its judgment, it may dispose of litigation. Sometimes men are not trained along the lines of trying cases, and lose sight of the fact that a case is to be tried from the testimony introduced in court, and nothing else. I want you to bear that in mind, and, Mr. Foreman, I want you to see that all are present during the discussion. If the occasion arises for one of you to leave the jury room, suspend the discussion until they are all present. See that no outside matters are injected into your inquiry in this matter. I know you will not do it intentionally, but you may do it inadvertently; but I caution you about it. Now, gentlemen of the jury, we are all citizens here, and we should all remain in a good humor. You should go out and get right down to this matter. Sometimes you can idle away time by idle gossip and telling funny stories. This is serious business. Dispatch it as quickly as you can, consistent with the truth, so that jus-

tice may be done. I ask you to give it all the expedition you can, consistent with a thorough consideration of all the matters."

In view of the peculiar methods often adopted by juries in arriving at their verdicts, and so often exemplified in the trials of cases, it was well for the trial court to deliver this admonitory charge to the jury in this case. There is nothing in the charge that gave the jury the least intimation of what their decision upon any question should be, and nothing is said therein to prejudice any right of either party. Luse et al. v. Beard (Tex. Civ. App.) 252 S. W. 246.

[10] But, in taking this exception to the court's oral charge, even if same had been erroneous, no ground was assigned as to why such charge was erroneous. The mere fact that the court talked in the presence of the jury in open court will not automatically reverse the case, but it must appear that the language used by the court was prejudicial to some right of the party, before it would authorize this court to reverse the case. Some injury must have been shown.

We have considered all assignments and propositions, and, finding no reversible error, we affirm the trial court's judgment.