Merrimack, ⎱
June 1, 1937. ⎰

HENRY LAFLAMME, *Adm'r v.* CARROLL G. LEWIS.

AZALEA BORNEMAN *v.* SAME.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Piper* orally), for the defendant.

BRANCH, J. Two closely related questions as to the meaning and effect of the motor vehicle law (P. L., c. 103 as amended by Laws 1927, c. 76) are presented by this record and final disposition of the case will be facilitated if they are given antecedent consideration. We, accordingly, take up these questions at the outset. Their purport may be summarized as follows: How far do the speed and parking regulations of the statute prescribe the conduct of the operator of a motor vehicle under conditions of poor visibility caused by fog?

With reference to the conduct of the driver of the sedan, the court charged the jury as follows: "Now he was in law bound to keep a reasonable look-out ahead, but if by reason of the fog being more or less dense his vision was obstructed, then he was bound to drive at a speed that was reasonably safe under the conditions that then existed. If his view was obstructed so that he could not see the truck until within fifteen feet of it or thereabouts, our statute limits him and his right to drive to fifteen miles an hour; a greater speed is

negligence." To this instruction the plaintiffs duly excepted. The provisions of the statute upon which this charge must have been based are as follows:

"It shall be *prima facie* lawful for the driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful: . . .

"III. Fifteen miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding.

"It shall be *prima facie* unlawful for any person to exceed any of the foregoing speed limitations." Laws 1927, *c.* 76, *s.* 2.

The plaintiffs now argue that this provision was inapplicable to the situation disclosed by the evidence for two reasons: 1, because "the statute is intended to apply to a situation where the driver's view is interrupted by physical obstruction and not where it is impaired by poor visibility," and 2, because "the automobile in which the plaintiffs were traveling" was not " 'traversing or going around' a curve or 'traversing a grade.' "

We think that the first of these arguments is untenable. The precise issue thus raised was considered by the Supreme Judicial Court of Massachusetts in the case of *Woodman* v. *Powers*, 242 Mass. 219 which involved the interpretation of a statute identical in most of its terms with P. L., *c.* 103, *s.* 18. The conclusion of the court was there stated as follows: "Manifestly the statute was designed to protect the public from injury from motor vehicles. The evident intention of the legislature was to require such vehicles to proceed slowly where the view of the operator is obstructed. The obstruction to view ordinarily would be the same whether it is caused by trees, buildings, bill boards or other permanent objects, or is due to darkness, a blinding snow storm or thick fog. It would be too narrow a construction of the statute to hold that it applies to obstructions of a permanent character only." With the reasoning and conclusion of the Massachusetts court we are content. That fog and smoke are regarded as obstructions within the meaning of similar statutes is indicated by the following decisions: *Sullivan* v. *Lutz*, 181 Wis. 61; *Bong* v. *Webster*, 217 Ky. 781; *Benjamin* v. *Noonan*, 207 Cal. 279. For numerous decisions holding, in the absence of statute, that fog constitutes an "obstruction" of vision, see Third and Fourth Decennial Digests, Tit., Automobiles, *s.* 168 (8) (9).

The second position of the plaintiffs is well taken. There is no

suggestion in the record that the accident happened upon a curve or grade within the meaning of the act. An engineer's plan of the location, which was in evidence, indicates a straight road for several hundred feet in both directions from the point of collision. If it was not entirely level, no appreciable grade was mentioned in the testimony or in the defendant's brief. Under these circumstances, the statutory provisions above quoted were clearly inapplicable and the instruction with reference thereto was erroneous.

The statutory provisions in regard to parking are as follows:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway." Laws 1927, c. 76, s. 3.

With reference to this statute the plaintiffs requested an instruction as follows: "6. There is no statutory or common law rule which precluded the operator of defendant's truck from parking the truck to the left of the main traveled portion of the highway." The court charged the jury as follows:

"The statutory duty is not absolute. It applies when and only when it is practicable to park or leave such vehicle standing off a paved or improved or main traveled portion of a highway. You are the sole judges of that. You had a view of the location of the highway at or near where the truck stopped, which may be treated as evidence. You have the evidence of the driver as to why he stopped at the point he did. Taking all that and any other evidence bearing on the point, you are to decide whether the east side of the highway in that vicinity was such that it was practicable to stop at a point, where, considering the dimensions of the truck, it would have been entirely off the main highway. . . . When the Almighty sends a fog, and that fog is so dense that with accompanying darkness it becomes impossible to see an automobile or truck that is parked two hundred feet away, with reasonable lights and reflectors, such as were required by the statute, then the statutory duty cannot be complied with . . . At any rate, I am going to charge you that inasmuch as the law does not contemplate the impossible, you will pay no attention to

that feature of this statute, provided you find the fog was so dense that the truck could not be seen at a distance of two hundred feet if equipped with lights and reflectors such as are required by the statute which I shall read a moment later. To these instructions the plaintiffs duly excepted.

Under the facts of this case we think that the trial court's interpretation of the statute with reference to the practicability of parking off the traveled portion of the highway was correct. In order to park on the opposite side of the road in a position to comply with the statute, in accordance with the plaintiffs' suggestion, it would have been necessary for the truck driver to back his vehicle approximately 150 feet in fog and darkness, crossing the line of south-bound traffic on the way. Such a manoeuver would have been fraught with great danger and might in itself have been the basis of a charge of negligence, as in the case of *Barnes* v. *Eastin*, 190 Ky. 392, where driving a motor truck on the wrong side of a highway when the view was obstructed by dust without warning signals was held to be gross negligence. It may be that under other circumstances the use of a parking place upon the left-hand side of a road might be practicable. There is little room for disagreement with the view of the trial court that this was not such a case.

The charge with reference to the second clause of the parking statute above quoted can hardly be reconciled with the court's previous construction of the speed law. If a "traveler's view is obstructed" by fog within the meaning of the speed regulations above referred to, the conclusion is inevitable that the same circumstances must preclude "a clear view" of a vehicle parked upon the highway. We do not understand the trial court's statement that under such circumstances "the statutory duty cannot be complied with." The statutory duty of a driver under the conditions enumerated in the act is to keep moving until he can find a place to park outside the traveled portion of the highway. There is nothing inherently impossible about this. We are not impressed by defendant's argument that "it is . . . matter of common knowledge that one can travel for miles . . . without finding any place where a car can be parked completely off the surfaced part of a highway. The interpretation of the statute for which the plaintiffs contend would make it practically impossible to park a car on a foggy night except in business or residence districts." We think it was the design of the statute to prohibit the parking of cars in the road under conditions of poor visibility. Some inconvenience to drivers may be a necessary

concomitant of this prohibition. We, therefore, conclude that the exception to this portion of the charge must be sustained.

The defendant's motions for nonsuits and directed verdicts involve no serious difficulty. It is conceded in defendant's brief that the evidence "warrants the conclusion that the truck was not properly equipped with a reflector and that the tail light was not lighted." It might also be found, as above indicated, that the truck was parked on the roadway in violation of the statute. The issue of the defendant's fault was, therefore, for the jury.

There is no merit in the defendant's argument that "the act of Mr. Lobban in driving into the rear end of the defendant's truck was the sole cause of the accident." It might be found that his failure to see the truck in time to avoid a collision was due to the absence of the prescribed lights, and if the truck had continued on its way, the time for observation and saving action would have been materially increased. Hence the defendant's argument that "it is at least as probable as otherwise that the accident would have happened if the car had been properly equipped with a reflector and tail light and had been moving at the moment of the accident," wholly fails to carry conviction. The question of Lobban's negligence need not detain us, since, in any event, it would not bar the plaintiffs' rights. *Hoen* v. *Haines*, 85 N. H. 36. The question of the plaintiffs' contributory negligence, if properly an issue in the case, was at most one for the jury. The defendant's motions were properly denied.

The verdicts must be set aside because of the two errors in the charge already noted and others about to be considered.

With reference to Lobban's use of the wind-shield wiper on his car, the court charged the jury as follows: "Was it [the wind-shield wiper] or was it not working? If it was not, that is an element that would be competent for your consideration on one or more features. It is competent on the question of whether or not the driver was negligent, for all men must agree that when it is foggy the wind-shield wiper should be used in the night time." We adopt the view of the instruction which is well expressed in the plaintiffs' brief as follows:

"The evidence disclosed that the density of the fog varied with the location and that it was not constant. Upon the evidence, the jury might properly have found that a reasonably prudent man would not have had his wind-shield wiper in constant operation. There was no evidence that the fog condensed on the wind-shield so as to affect visibility. Under the circumstances, it could not be said as a matter of law that failure to use the wind-shield wiper would have

been negligence. The issue presented was one of fact for the jury. The instruction erroneously disposed of the issue as a matter of law."

The court further charged the jury, with reference to the conduct of the passengers, as follows:

"If you find it [the wind-shield wiper] was not working, and Mr. Laflamme and Miss Borneman, one or both, saw that it was idle, then it is a question whether the average person riding as a passenger would have called the attention of the driver to the fact that the wind-shield wiper was not working and insist on it being used. If the average person would have done that, then the failure of either or both of the plaintiffs to do that is evidence of negligence on the part of the one or both that saw that it was not working, and if one or both were negligent in that respect, the one you find so negligent in that particular becomes bound by the negligence of the driver of the sedan and barred by their own contributory negligence, and if both were negligent in that respect, both would be barred."

The statement that a passenger would, under some circumstances, "become bound by the negligence of the driver," appears no less than three times in the charge. The error inherent in this instruction was clearly pointed out in *Hoen* v. *Haines*, 85 N. H. 36, 39. Even in cases where the driver is known to be incompetent, "recovery is denied not because the negligence of the driver is imputed to the passenger but because the passenger's fault in riding with the incompetent driver is the proximate cause of the injury." *Ib.*

Since Mr. Laflamme died as a result of the accident, the evidence was necessarily silent as to his knowledge in regard to the use of the wind-shield wiper, and since the burden of proof to establish contributory negligence rested upon the defendant, (P. L., *c.* 328, *s.* 13) the decedent could not be found to have been at fault in this particular. It was, therefore, error to submit the question of his contributory negligence in this respect to the jury. *Hayes* v. *Company*, 86 N. H. 486.

Neither would the testimony in regard to Miss Borneman's conduct justify a finding that she was at fault in this particular. Lobban, the driver, testified that the wind-shield wiper was in use and there was no direct contradiction of his testimony. The only other testimony upon the subject came from Miss Borneman herself, who testified upon cross-examination as follows: "I don't recall if I saw it working, I don't know. I couldn't say for sure. I didn't see it." Upon being pressed further she testified: "Q. If the wind-shield wiper had been working you would have observed it, wouldn't you? A. Yes, I imagine I would have. Q. You didn't see him at any time

using his wiper?  A. No."  If this testimony would support a finding that the wind-shield wiper was not in operation, it would not justify a conclusion that Miss Borneman was at the time conscious of that fact.  Hence it could not be found that her actual knowledge gave rise to a duty to act.  A conclusion that she ought to have known that the wind-shield wiper was not in operation and ought to have acted upon that knowledge, could be supported only upon the erroneous assumption that the duty of a passenger with reference to the operation of a motor vehicle is of the same order as that of the driver.  The invalidity of this assumption was exposed in *Hoen* v. *Haines, supra,* and in *Salvas* v. *Cantin,* 85 N. H. 489 where it was pointed out that there is no rule of law which requires "that a passenger must be constantly on the alert to discover unanticipated but possible danger or that he must at all times be prepared to guard against a possible lapse from the standard of due care on the part of his driver."  We, therefore, conclude that neither passenger could properly have been found guilty of negligence with reference to the operation of the wind-shield wiper and that it was error to submit this question to the jury.

Similar errors appear in the instructions regarding the duty of the passengers with reference to the speed of the car, which were as follows:

"I have told you that if his view of the truck, if it was outside of his view until he was within fifteen or twenty feet of it, the law limits him to the right to drive at fifteen miles an hour; if he drove at a speed greater than the average person would have driven under the conditions that then existed or at a speed that was greater than was reasonable speed or greater than that allowed by law, then the plaintiffs or either of them, if they were aware of his speed, then the one that observed it had the duty of requesting the driver to reduce the speed and failing to do that would be negligence, and if it contributed to the accident, it would bar any right to compensation on the part of the one that observed the speed and failed to call the driver's attention to it and request him to slow down, or both of them, if both observed it.  Contributory negligence on the part of the plaintiffs or either of them is a bar to the one guilty from obtaining a verdict at your hands, and makes such passengers bound by any negligence of the driver of the sedan."

Here again the evidence is silent in regard to Mr. Laflamme's knowledge and conduct, and no finding of negligence on his part with reference to the speed of the car could properly have been made.

The error in the instruction that the statute limited the legal speed at this point to 15 miles per hour, has already been pointed out. The instruction that if the passenger knew that the speed exceeded this rate he "had the duty of requesting the driver to reduce the speed," is consequently erroneous. Moreover, any statement of the passengers' duty to control the speed of the car in such unqualified form would have been error. "The duty to remonstrate is not, however, an absolute one but depends on the circumstances of the particular case," (*Ramsdell* v. *Company*, 86 N. H. 457) and under some circumstances " 'reasonable men might conclude that it was the part of prudence . . . not to interfere'." *Noel* v. *Lapointe*, 86 N. H. 162. The failure of the court to submit to the jury the question of what reasonable care required under the circumstances, was error.

The evidence, however, did raise an issue in regard to Miss Borneman's conduct. If the speed of the car was found to be excessive and dangerous under the circumstances and if it was found that Miss Borneman knew or should have known of the danger, then it would be for the jury to determine whether due care on her part required that she protest to the driver or whether it was the part of prudence not to interfere. A decision upon these issues would, in turn, involve the further questions, whether the circumstances were such that a protest or warning from her would probably have been heeded and acted upon by the driver, and whether the time available after the discovery of the danger and before the happening of the collision permitted the making of an effective protest and saving action by the driver in response thereto. Unless these latter questions were answered in the affirmative, it could not be found that Miss Borneman's failure to protest contributed to cause the accident. An instruction to this effect, accompanied by an explanation of the difference between the obligation of a driver and that of a passenger, would have been sustainable.

The court further instructed the jury that "if either plaintiff saw the truck before the driver of the sedan in season to have appreciated the danger and warn him," that plaintiff would be barred "from obtaining a verdict" and "bound by any negligence of the driver." There was no evidence that either passenger did see the truck before the driver of the sedan, and hence this instruction was error.

We, therefore, conclude that the evidence did not justify the submission to the jury of any issue in regard to Mr. Laflamme's contributory negligence and that the only possible question for the jury

in regard to the conduct of Miss Borneman was that in reference to the speed of the car.

The questions presented by the plaintiffs' remaining exceptions do not seem likely to arise at another trial and have not, therefore, been considered.

*New trial.*

All concurred.